·CHARLES M'MICKEN, PLAINTIFF IN ERROR v. AMOS WEBB, AARON SMITH, AND IRA SMITH, DEFENDANTS.

M'Micken and Ficklin were in partnership, as merchants, in the state of Louisiana; and at the dissolution of the connection, Ficklin agreed to purchase the half of the stock belonging to M'Micken; and after the partnership was dissolved, gave him, in payment for the same, a promissory note, payable, after its date, to the order of M'Micken and Ficklin, which was executed by Ficklin, Jedediah Smith, and Amos Webb, by which they promised, jointly and severally, to pay the amount of the note. Although the note was made payable to the order of M'Micken and Ficklin, the latter was in no wise interested in it, as the payee thereof. ·M'Micken is a citizen of Ohio, and the drawers of the note were citizens of the state of Louisiana. ·Amos Webb resided in the western district of Louisiana, but when the process in this suit was served upon him he was in New Orleans, in the eastern district. The defendant, Webb, denied the jurisdiction of the district court of the United States for the eastern district of Louisiana, alleging that he was a citizen of the western district. The defendants pleaded in abatement; and to the jurisdiction, that the suit should have been brought in the name of both the payees, and at the time it was given, Ficklin was a citizen of Louisiana; this suit could not, therefore, be brought in the district court of the United States.

he residence of a party in another district of a state than that in which the suit is brought in a court of the United States, does not exempt him from the jurisdiction of the court. The division of a state into two or more districts, cannot affect the jurisdiction of the court on account of citizenship. If a party is found in the district in which he is sued, the case is out of the prohibition of the judiciary act, which declares that " no civil suit shall be brought in the courts of the United States, against a defendant, by any original process, in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ."

The objection to the jurisdiction of the court, on the ground that the note was given to Ficklin and M'Micken, and as Ficklin was a citizen of Louisiana, the suit is interdicted by the prohibition of the judiciary act, which declares that the courts of the United States shall not have cognisance of a suit in favour of an assignee of a chose in action, unless a suit could have been prosecuted in said court, for the same, if no assignment had been made, except in cases of foreign bills of exchange; cannot be sustained. Ficklin never had any interest, as payee, in the note. Although the note had been given in the names of both persons, it was for the sole and individual benefit of M'Micken, and there was no interest which Ficklin could assign.

IN error to the district court for the eastern district of Louisiana.

The plaintiff in error filed his petition in the court below, averring that he was a citizen of and resident of the state of Ohio, claiming

that the defendant, Amos Webb, who was also averred to be a citizen and resident of the state of Louisiana, with Mary Ann Smith, in her own capacity, and also as tutrix to Catharine Smith and Sarah Smith, minor children, and heirs of Jedediah Smith, who is now deceased, and whom the said Mary Ann, as his widow, now survives, having, since his death, intermarried with Ira Smith, who is, therefore, the tutor of said children, all of whom, also, are citizens of and resident in the state of Louisiana, were jointly and severally indebted to the plaintiff in the sum of 4,866 dollars 93½ cents, besides interest and costs. The plaintiff averred that said indebtedness depended upon the following facts:

In 1815 the petitioner, the plaintiff, and one James H. Ficklin, formed a copartnership, and did business in the parish of Feliciana, in the state of Louisiana, under the name of M'Micken & Ficklin; that on or about the 8th of September, 1817, the partnership was dissolved by mutual consent; and the stock of merchandise then on hand the said Ficklin agreed to take to his own account, and to pay for one-half of the same to the petitioner, at the original cost, with the addition of five per centum; to conclude which agreement, the said Ficklin thereupon executed the note of which the following is a copy:

"$4,866 93½. ST. FRANCISVILLE, Sept. 20, 1817.

"On the 1st day of March, 1819, we, or either of us, promise to pay, jointly or separately, unto M'Micken & Ficklin, or order, four thousand eight hundred and sixty-six dollars ninety-three and one-half cents, being for value received, with ten per cent. interest, after due, until paid.

(Signed) JAMES H. FICKLIN,
JED. SMITH,
AMOS WEBB."

The petitioner then avers that the note was made payable to M'Micken & Ficklin; that it was in fact, and intended so to be for his (petitioner's) portion of said partnership property, the same having been made after said firm had been dissolved; the joint name being used merely for the petitioner's sole benefit, the said Ficklin being in no wise a party thereto, except as one of the obligors.

The petitioner further avers that said Mary Ann Smith, and her two said minor children, (Catharine and Sarah) now own and possess

[M'Micken v. Webb.]

all the property and estate of said Jedediah Smith; the said Catharine in right of her community, and the said children as heirs, and by reason of which they have become obligated, *in solido,* to pay to the petitioner the amount of the note aforesaid.

A citation was prayed for in the usual form. Service was legally made, and, on the 11th of February, 1835, Webb, one of the defendants, appeared, by his attorney, and filed three pleas to the jurisdiction of the court. The other defendants, Mary Ann Smith and her children (Catharine and Sarah) appeared on the same day, by attorney, and filed two pleas to the jurisdiction. The pleas by all the defendants, with the exception of the first, are the same, and, they presented the same questions for consideration.

The first plea by Webb is, "That while he admits he is a citizen of the state of Louisiana, and that he was in New Orleans when the citation was served, he avers that he resides in the parish of St. Landry, in the western district of said Louisiana; wherefore he prays judgment, and whether the court will take further cognisance of the cause as regards him, or that the suit may be transferred to said western district of Louisiana, at the cost of the petitioner."

The second plea, which is common to all the defendants, avers, that as the note stated in the petition is made payable to M'Micken & Ficklin—that, as the petitioner can only bring suit thereon by virtue of some assignment thereof, and protesting that there is no such assignment, it does not appear, by averment in the petition, that said M'Micken & Ficklin, comprising the payees of said note, could have prosecuted their suit against the makers thereof in this court. To these statements is added the general prayer that the court will not take jurisdiction.

The third plea avers that it does not appear by the petition that the payees, at the time said note was made, could have prosecuted, or that the makers could have been prosecuted, in the district court.

Several other pleas appeared in the record, but they present matter in bar, and as they were not considered by the court below, they are not stated.

In December, 1835, the cause came on for hearing, and the judgment of the court is thus recorded:

"The court having maturely considered the plea to the jurisdiction made in this case, now order that the same be sustained, and that the plaintiff's petition be dismissed at his costs."

[M'Micken v. Webb.]
The plaintiff prosecuted a writ of error to this Court.

The case was argued at the bar by Mr. Storer, for the plaintiff in error; and the counsel for the defendants, Mr. Eustis, submitted a printed argument to the Court.

Mr. Storer, stated that the plaintiff insisted that the judgment of the circuit court of Louisiana should be reversed.

As the opinion of the court is not clear in designating the particular plea which was sustained, it is necessary to examine them all. None of them will furnish a legal ground for the judgment of the court below.

As to the residence of the defendant, Webb, in the western district, at the time he was served with process by the marshal of the eastern district, it is not apprehended that the fact can change the relation of the debtor, or take away the jurisdiction of the court.

The state of Louisiana is divided into two districts by the law of 1823. Laws U. S. vol. 7, 173. "For the more convenient transaction of business," as is stated in the first section; there is no limitation of jurisdiction; there is but one judge to preside over both districts, and the same practice obtains in each.

The limitation in the judiciary act of 1789, c. 20, § 11, it is believed, is clear on this question. "If the defendant is an inhabitant of, or is found in the district at the time process is served, the action is sustainable."

As to the second plea which is set up by all the defendants, the plaintiff in error insists that, by the law of 1824, Laws U. S. vol. 7, 315, regulating the mode of practice "in the courts of the United States for the district of Louisiana;" it is enacted that the mode of proceeding in civil causes therein, shall be conformable to the laws directing the mode of practice in the district courts of that state. The mode of procedure by petition is adopted from the state practice, and is, in fact, a suit in chancery; a procedure derived from the civil law, and intended to avoid the technicalities of the ordinary pleadings in courts of common law. It is immaterial, then, as to the objection of an assignment to transfer title, when, in equity, a parol transfer, for good consideration, is equally as valid as a written assignment. Besides, a chancellor will reform a contract to suit the intentions of the parties.

[M'Micken v. Webb.]

The plea of the defendants admits all the allegations in the petition, and they, it is insisted, make out a clear case of mistake.

If Ficklin had no interest, he need not have been made a party. If he had, there was a necessity that the court shall have required that he should be joined in the suit, before the final decree was rendered: when joined, it would then be the proper time to ascertain whether he was subject to the jurisdiction or not. In no view of the case was there a necessity that Ficklin should be made plaintiff, provided the statements in the petition are true; and as such they must now be regarded.

As Ficklin was not interested, nor could be made plaintiff on any just principle, it is immaterial where his residence was, or is. M'Micken, the petitioner, now resides in Ohio; and it was never doubted but the original parties to a contract, might avail themselves of any federal tribunal where their residence gave jurisdiction. That jurisdiction does not depend upon the contract, but upon the legal character of the parties. It is admitted that when a note is assigned, the assignors must have had the ability to sue in the United States court at the time of the transfer; and this decision was made to prevent the transfer of notes in *"fraudem legis;"* to deny to the resident creditor, when he could not in his own name sue in the circuit court, to use the name of another. Here, the plaintiff labours under no such disability.

The third plea is similar to the second, and is answered by the same argument which has been opposed to it. It is broader, however, in one respect, as it includes the averment that the defendants, the makers of the note, could not have been sued in the United States court when the note was made, or when it was assigned. As to a part of this matter, the objection is destroyed by the fact that the place where the contract is made does not fix jurisdiction: and as to the other, the force of the plea is not perceived. If the note in its origin acquired no *locality*, certainly a subsequent transfer could not give it an exclusive *"situs;"* besides, as it is contended, no assignment is set up, for none was necessary.

Mr. Eustace, for the defendant, submitted the following points:

1. The plaintiff does not make such allegations as to give the United States courts jurisdiction of the case; and this is pointed out by the exception of the defendants in plea to the jurisdiction.

2. In a suit against the drawers of a promissory note, on the law side of the United States court, under the act of 1789, § 11, *all the payees* must join and allege the facts necessary to give jurisdiction.

3. In all obligations not under seal, in a suit between original parties, when the plaintiff in his own declaration or petition, shows all the defendants to be naked sureties, there are no equities against them, either for jurisdiction, form of action, or on the merits.

This is a suit on a promissory note, in the following words:—

$4,866 93½.　　　　　　　　　*St. Francisville, Sept. 2, 1817.*

On the first day of March, 1819, we, or either of us, promise to pay, jointly or separately, unto M'Micken & Ficklin, or order, four thousand eight hundred and sixty-six dollars, ninety-three and one-half cents, being for value received, with ten per cent. interest, after due, until paid.

　　　　　　　　　(Signed)　　　　JAMES H. FICKLIN,
　　　　　　　　　　　　　　　　　JED. SMITH,
　　　　　　　　　　　　　　　　　AMOS WEBB.

It is a promissory note, payable to order, and therefore completely within the act of September 24, 1789, sec. 11, which is as follows:

"Nor shall any district or circuit court have cognisance of any suit to recover the contents of any promissory note, or other chose in action, in favour of any assignee, unless a suit might have been prosecuted in such court to recover the said contents, if no assignment had been made; except in cases of foreign bills of exchange." 1 Story's Laws of the U. S. 57. Sergeant's Con. Law, 116.

It is to be observed, that the suit on this promissory note is brought by M'Micken *alone*, although the note is payable to *M'Micken & Ficklin*. No endorsement or assignment is alleged to have been made by M'Micken & Ficklin, but the following allegation is made:

"Your petitioner further shows, that said obligation was erroneously made payable to M'Micken & Ficklin, though in truth and in fact said note was dated and executed subsequently to the said dissolution of said firm, and was made towards and in behalf and for the sole and individual benefit of your petitioner; the joint name of the then late firm being used and intended for your petitioner's sole benefit, and Ficklin being in no wise a party, or interested therein, except as one of the obligors."

If any thing can be gathered from this singular allegation, it is that a note intended to be drawn in favour of Charles M'Micken, and who alone was entitled to receive the contents, was by mistake and error drawn in favour of M'Micken & Ficklin, who, according to previous allegations of the petition, had been in partnership together. This allegation, if it amounts to any thing, amounts to an allegation that M'Micken is the equitable assignee of the note.

The claim of the plaintiff, according to the colour and tenor of his own petition, if on his own showing it can be maintained at all, either as to the jurisdiction, or the merits, ought to have been prosecuted on the equity side of the court; and it is obvious that the attorney for the plaintiff was at a loss how to state his case.

He alleges error without showing why it was an error. The *consideration* of the note *moved* from *M'Micken & Ficklin* to *Ficklin*, it being alleged that Ficklin, one of the partners, purchased the goods of M'Micken & Ficklin—unless, therefore, the goods all belong to M'Micken, or unless the note was given for M'Micken's one-half of the goods, neither of which allegations are made, the note was properly drawn in favour of M'Micken & Ficklin.

Legally speaking, the plaintiff's case cannot have the benefit of the supposition that he is an equitable assignee, for his suit is brought on the law side of the court. There is nothing in the shape, form, address, prayer or proceedings, which give it the character of a bill in equity; and from the decision against him, the plaintiff has taken a writ of error, not an appeal; although in relation to the distinctions of law and equity, proceedings in the courts of Louisiana are of an anomalous character, and are mixed up together without any line of distinction, a party who goes into the United States court in that state, must clearly announce his intention when he seeks to avail himself of the equity powers of the court, in contradistinction to its legal jurisdiction.

The case was decided by the district judge, on the mere question of jurisdiction on the third plea or exception to the jurisdiction, as contained in the printed record.

This plea proceeds on the principle that when a suit is brought in the United States courts on a promissory note payable to order, against the *drawers*, it must be brought either

1st. By the payees, and then there must be the usual allegations of citizenship to give jurisdiction; or

2d. By an assignee or endorsee of the payee, and in this case, be-

[M'Micken v. Webb.]

sides the usual allegations of citizenship, there must be an allegation that the payee, at the time of assignment, could have prosecuted the suit in the United States courts, if no assignment had been made.

3d. That the suit in the present case is not brought by the payees, and does not contain the allegations necessary to give jurisdiction.

The second rule or principle is laid down in Sergeant, 117, in these words: "And if the plaintiff claim as assignee, it must appear by the record that the person under whom he claims by assignment, might have prosecuted his suit in the circuit court; otherwise the court has no jurisdiction." Sergeant cites Turner v. The Bank, 4 Dall. 8. Montalet v. Murray, 5 Cranch, 46.

The necessity of the allegation that the payees were non-citizens, or could have brought the suit at the time of the assignment, is recognised in Kirkman v. Hamilton, 6 Peters, 20; the principle is directly deduced from the doctrine of the limited jurisdiction of the United States courts: "The decisions of this court require that the averment of jurisdiction shall be positive, that the declaration shall state expressly the fact on which the jurisdiction depends. It is not sufficient that jurisdiction may be inferred argumentatively from its averments;". Brown v. Keene, 8 Peters, 112.

The right to the jurisdiction must rest on clear, plain and simple averments, on which a single and simple issue can be joined. If it be allowed to rest on *error* in the form of taking the note, it would require a chancery suit and a full investigation of the merits of the case, before it could be settled whether the court had or had not jurisdiction. This Court has decided that the question of jurisdiction, when contested, must be settled by a preliminary trial, and before going into the merits of the case.

In this petition there is no substantive allegation of an assignment of the note sued upon, or if the matters alleged amount to such an allegation, there is no allegation *when* the assignment was made, or that at *the time* the assignment was made the payees could have brought suit on this note in the United States court.

M'Micken is not the payee of the note—*He brings the suit for his own exclusive benefit;* the payees are M'Micken & Ficklin—if, therefore, M'Micken individually can bring suit on the note for his own benefit, it must be in virtue of some legal or equitable assignment from the payees.

None such *is* alleged, and if the matter alleged be considered as amounting to an allegation that in equity, M'Micken is entitled to an

[M'Micken v. Webb.]

assignment of this note from M'Micken & Ficklin; and that is the most favourable aspect of the case: still there is no allegation that at the time that assignment ought to have taken place, M'Micken & Ficklin could have prosecuted this suit in the United States courts. Equitable as well as legal assignments are included in the act. Serg. 116, cites Sere et al. v. Pitot, 6 Cranch, 332.

The Court will disregard the vain attempt to combine an action at law on a promissory note, with a suit in equity to reform a written contract for alleged error. When practitioners come into the United States courts in Louisiana, they are bound to recognise the clear and manifest distinctions between legal and equitable rights and remedies.

The Court can only consider this suit to be what in its form, &c. it purports to be, viz: an action at law on a promissory note payable to order, against the drawers, brought by a plaintiff claiming in other rights and interests than as payee of the note.

It is believed that if this case had been put in the form of a suit by M'Micken & Ficklin as plaintiffs, for the use of Charles M'Micken, a form used in some of the states, this form of action would have been considered as substantially an allegation of an assignment by M'Micken & Ficklin to Charles M'Micken; and the suit could not be maintained without the required averments. Or if M'Micken & Ficklin were alleged to be trustees for Charles M'Micken, it must have been alleged that both of them were citizens of other states than Louisiana.

It may be asserted, without fear of contradiction, as a judicial question, that there are no such distinct and substantive averments of facts necessary to give jurisdiction upon which any issue can be joined. The Court will perceive the difficulty the attorney of the defendant was under in drawing a plea to the jurisdiction. The petition is an hermaphrodite, neither properly a proceeding at law or in equity; and cannot scientifically be encountered by any known shape or form of defence. It is substantially met by the objection that it does not contain averments and allegations of facts to give jurisdiction to the United States court in a suit on a promissory note.

It is respectfully urged that the course of reasoning and construction of the law on subjects connected with the jurisdiction of the Court, has heretofore been rigorous, and that this course ought not to be relaxed.

Vol. XI.—E

If suggestions like the one in the present case are admitted as the basis of jurisdiction, and the maxim, *est boni judicis ampliare juris-dictionem,* be acted upon, there is danger that fictions similar to the *ac etiam* and *quo minus* clauses, which gave universal jurisdiction to the king's bench, and exchequer courts, will be resorted to: and the United States courts will cover the whole field of litigation, without any real limits to their jurisdiction, and that the whole distinction of federal and state governments and jurisdiction will disappear; a result which is not considered desirable.

It is to be observed that this subject and case are governed by a special and positive act of congress, from which the inferences of the allegations necessary to give jurisdiction are clear and precise; and the Court will not be disposed to get round them for the benefit of this very singular case. It is called singular, and so it appears on the statement of the plaintiff himself.

According to that statement, (by protestation as to its being the whole truth) Charles M'Micken and James H. Ficklin were in partnership as merchants—they dissolved, and Ficklin takes the goods at a stipulated price—for the price Ficklin gives the promissory note, the subject of the suit, with Smith and Webb as sureties, obligors *in solido*—that promissory note is drawn in favour of M'Micken & Ficklin; and M'Micken now says that this was done in error, and that the note ought to have been drawn in his favour individually. He does not attempt to show why it was an error—on the contrary, if, as is alleged, the goods belonged to M'Micken & Ficklin, the representative or price was properly made payable to the partnership; for each partner owned one-half of the goods, and was entitled to one-half of the price.

Had it been alleged that this note was given for the one-half of the goods which belonged to M'Micken, and was by error made payable to M'Micken & Ficklin, instead of M'Micken, a reason could have been given why it was an error to make it payable as it was drawn—there would have been a *prima facie* case of equity to entitle M'Micken to the jurisdiction of the equity side of the court—though it is believed that even with such allegations the right to the jurisdiction should be maintained, for it involves too complicated a preliminary investigation—and as to Webb and Smith, naked sureties, there are no equities.

But no such allegation is made. The allegations go to show that the goods belonged to the partnership, and of course the note for

their price did also belong to the partnership. This transaction, it is alleged, took place on the dissolution, and as a part of the dissolution; and it is strange to allege error without showing in what respect, and for what reason it was an error.

Smith and Webb are mere sureties, as is shown by the following considerations. 1st. This contract is a promissory note, a simple contract, and not a sealed one. 2d. The suit is between original parties to the note. Therefore, the considerations of the note may be inquired into.

. Again, the plaintiff himself alleges that the consideration of the note was the sale of goods by M'Micken & Ficklin to James H. Ficklin. This affirmative is pregnant with another affirmative; for it follows as a necessary consequence from this allegation that Ficklin was principal in the note, and Smith and Webb were mere sureties.

The Court may think this controversy involved in a cloud, and feel disposed to favour a further development of it, or consider the objection to the jurisdiction as captious, and might feel more at ease in deciding, if any supposable explanation of the transaction were given.

We will then suppose M'Micken and Ficklin to be in partnership —they agree to dissolve—Ficklin buys the stock of goods, of which, as partner, he is one-half owner, and which is estimated at 9,733 dollars 87½ cents, viz : twice the amount of the note; for M'Micken's one-half, Ficklin pays cash. Ficklin is himself the owner of the other half ; M'Micken is the liquidating partner, and undertakes to collect the debts due to, and pay the debts due by the late firm; but M'Micken suggests that the debts due to the firm might not be sufficient to pay the debts due by the firm. In such case Ficklin would have to bring back what he took out. To meet this possible contingency, Ficklin makes his note, with sureties, for the amount of his own one-half of the goods, in favour of the partnership, payable at an interval within which it was supposed the partnership affairs would be liquidated and settled, and places it in the hands of the liquidating partner.

Such a solution explains the whole transaction, without supposing any error in any party; and the decease of Ficklin, immediately afterwards, would explain the attempt and perseverance of M'Micken in desiring to extract this money from the sureties, without showing any settlement of the partnership affairs.

It will be observed, this is a very stale transaction; not that M'Micken has slept on his supposed rights, (for this is the tenth suit brought on this identical note: see for one of them, Walker v. M'Micken, 9 Martin's Reports, 192,) but that he has never dared fairly to bring his case before a court of justice, and has, therefore, uniformly been driven out of court, or has discontinued the moment a decision was about to be made.

. The citizens of Louisiana hold their property and enter into contracts under the doctrines and rules of the civil law; and prefer having them passed upon by their domestic tribunals. If the plaintiff could, in any manner, have made such allegations as would have entitled him to the jurisdiction of the United States court, it was open to him, after the exception was filed, to have made such amendments to his petition, consistent with the facts of the case, as would have entitled him to the benefit of that jurisdiction. His not having done so is conclusive that he can make no better statement of his case, in that respect, than is now on file. That Ficklin is dead, is a fact not alleged, is not judicially known to the court; nor if. it were alleged, would it avail, for there is no survivorship of action, even among commercial partners, by the laws of Louisiana. Crosier v. Hodge, 3 Lou. Rep. 358. M'Micken cannot, therefore, sue for this note as surviving payee. He claims the contents in his individual and private capacity.

The conclusion is, that for the reasons, and on the authorities before cited, the plaintiff, who sues the defendants as drawers of a promissory note payable to order, and who is not himself the payee of that note, and does not claim in that capacity, has not made such allegations and averments, and in such form and manner, as to show himself entitled to bring the suit in the court of the United States. If this conclusion is correct, the judgment of the court below will be confirmed.

Mr. Justice THOMPSON delivered the opinion of the Court:

This case comes before this court on a writ of error. from the district court of the United States, in and for the eastern district of the state of Louisiana.

The suit in the court below was commenced by petition, in which the cause of action is set out informally, but substantially, as follows. That the defendants are jointly and severally indebted to the plaintiff

[M'Micken v. Webb.]

in the sum of $4866.93, besides interest and costs.    For this, to
wit: that some time in ·the year 1815, the petitioner and one James
H. Ficklin formed a co-partnership and did business in the parish of
Feliciana in the state of Louisiana; under ·the name and firm of
M'Micken & Ficklin; that on or about the 8th day of September,.1817,
said partnership was dissolved by mutual `consent.    That at the time
of such dissolution there was a quantity or stock of goods on hand,
which Ficklin took and purchased at cost with five per cent. addition,
and for the payment of one-half of said stock of goods, he gave to the
petitioner, a promissory note, dated the 20th of September, 1817, and
payable on the 1st of March, 1819, to the order of M'Micken &
Ficklin, for the sum of $4866.93, which note was executed by said
Ficklin, Jedediah Smith (by the name of Jed. Smith) and Amos
Webb, by which they promised jointly and severally to pay the.
aforesaid sum, according to the terms of said note, a copy of which is
annexed to the petition.    The petition avers, that the note was made
and dated subsequent to the dissolution of the partnership, and
although made payable to M'Micken & Ficklin, it was made for the
sole benefit of the petitioner M'Micken, and that Ficklin was in no
wise interested therein except as one of the obligors.    The petition
then sets out the death of Jedediah Smith, and here the other defend-
ants become bound to pay the note.    It also contains an averment
that the petitioner is a citizen of the state of Ohio, and that the de-
fendants are citizens of the state of Louisiana.

To this petition several pleas to the jurisdiction of the court are
interposed.    The defendant Webb, in one of his pleas, admits, that
he is a citizen of Louisiana, and that he was in New Orleans when
the petition and citation were served upon him; but avers, that he
resides in the parish of St. Landry, in the western district of Louisi-
ana, and denies the jurisdiction of the court on this ground.

The second plea in abatement is founded on the fact which is set
out in the petition, that the note in question is made payable to
M'Micken & Ficklin, and the suit is in the name of M'Micken
alone, without showing any assignment by Ficklin, or that, at the
time of making said note, M'Micken & Ficklin could have prose-
cuted a suit upon it in this court.

The third plea alleges a want of jurisdiction in the court; because
the petition does not allege that at the time of assigning said note
the payees might have prosecuted the makers in this court..

[M'Micken v. Webb.]

The other defendants also interposed pleas to the jurisdiction of the court, upon the grounds substantially as set forth in the two last pleas of Amos Webb.

The court below sustained these pleas to the jurisdiction of the court, and dismissed the petition.

This petition, although informal in many respects, must be considered as the commencement of a suit at law, according to the course of proceedings in the courts of the state of Louisiana; and is properly brought up here by writ of error. The object of the petition is simply to set forth the cause of action, and praying that the defendants may be cited in court to answer to the demand set up against them; and all that is required in such petition according to the practice in Louisiana is, that it should contain a clear and concise statement of the object of the demand, or the cause of action upon which it is founded.

The question presented by the first plea to the jurisdiction of the court is whether Webb, a citizen of the state of Louisiana, who resided in the western district of that state, could be sued by a plaintiff, who was a citizen of the state of Ohio, in the district court of the eastern district of the state of Louisiana. The residence of Webb being in the western district of Louisiana, could not affect the jurisdiction of the court. The plea admits that he was a citizen of Louisiana, and the act of congress gives jurisdiction where the suit is between a citizen of the state where the suit is brought, and a citizen of another state; and the division of a state into two or more districts cannot affect the jurisdiction of the court on account of citizenship. This plea admits that the petition and citation were served upon him in New Orleans, which takes the case out of the prohibition in the judiciary act, that no civil suit shall be brought in the courts of the United States, against an inhabitant of the United States, by any original process, in any other district, than that whereof he is an inhabitant, *or in which he shall be found at the time of serving the writ.*

The second plea to the jurisdiction of the court is founded on the assumption, that the plaintiff M'Micken, is to be considered as the assignee of M'Micken & Ficklin of the note in question, and that the petition does not allege that they could have prosecuted a suit upon it in the courts of the United States; and that the case therefore falls within the prohibition in the judiciary act: That no district or

[M'Micken v. Webb.]

circuit court shall have cognisance of any suit to recover the contents of any promissory note, or other chose in action in favour of an assignee, unless a suit might have been prosecuted in such court to recover the said contents, if no assignment had been made; except in cases of foreign bills of exchange. Laws U. S. 2 vol. 61.

But the cause of action, and the right of the plaintiff to sustain it do not place him in the character of assignee. Ficklin never had any interest whatever in the note, according to the allegations in the petition; the partnership had been dissolved before the note in question was given. The consideration thereof was M'Micken's share of the stock and goods on hand at the time of the dissolution of the partnership; and the petition avers, that although the note is given in the name of the late firm of M'Micken & Ficklin, it was for the sole and individual benefit of the petitioner, and that Ficklin was in no wise a party or interested therein, except as one of the obligors; there was therefore no interest which Ficklin could assign, and the objection is one purely of form and of a mere technical character; which ought not to be noticed according to the course of proceedings in the courts of Louisiana. The facts set forth in the petition may well be considered as an averment that the note was given to the petitioner, M'Micken, under the name and description of M'Micken & Ficklin. And this view of the case disposes of the matter set up by the other defendants in their pleas to the jurisdiction of the court, as well as of that which is set up in the third plea to the jurisdiction of the court.

There are other pleas to the merits interposed, de bene esse, by all the defendants, and which have not, of course, been in any manner considered or disposed of by the court below, as the pleas to the jurisdiction of the court were sustained, and the petition dismissed. Nor does the record contain the necessary matter to enable this Court to dispose of the case upon its merits; some of those, turning upon questions of fact, the evidence to sustain which not all appearing upon the record; and the cause must therefore necessarily go back for further proceedings on those pleas.

The judgment of the court below is accordingly reversed, and the cause sent back for further proceedings.

This cause came on to be heard on the transcript of the record from the district court of the United States for the eastern district of

[M'Micken v. Webb.]

Louisiana, and was argued by counsel; on consideration whereof, it is now here ordered and adjudged by this Court that the judgment of the said district court in this cause be and the same is hereby reversed, and that this cause be, and the same is hereby remanded to the said district court for the further proceedings to be had therein according to law and justice, and in conformity to the opinion of this Court.