## LONG DOCK COMPANY, PROSECUTOR, v. STATE BOARD OF ASSESSORS ET AL.

Argued November 4, 1915—Decided June 10, 1916.

1. On a valuation of railroad property, brought before the Supreme Court, it was the duty of that court to examine the evidence and reverse the valuation of the state board in case of palpable error, hence, when that was done and the Supreme Court directed a reassessment, it was proper that further testimony on valuations should be taken.

2. In valuing property of a railroad company, including all of its terminal yard and water front, property adjoining its main stem, and land used · for car storage and similar railroad purposes, it is proper to consider the increased value imparted to the several parcels by their assemblage into a connected whole appropriate to a railroad terminal.

3. Land under water, owned by a taxpayer, may be joined to the upland for assessment or segregated into separate tracts in the discretion of the assessors.

4. If a right to reclaim, not exercised, exists, it may be regarded as an increment of value to the shoreward property.

5. The element of adjacency or proximity or accessibility to tidewater may extend within reasonable limits, more or less indefinitely inland, as an element of value, as where questions of convenient storage are involved, the situation with regard to tidewater and accessibility then becomes important.

6. In valuing property of a railroad company, including all of its terminal yard and water-front property, other property adjoining

its main stem and land used for car storage and similar railroad purposes, or other property similarly situated, may, for purposes of comparison, be considered by the assessors in arriving at a valuation thereof, it being impossible to secure identical conditions, and substantially similar conditions being all that is required.

7. In assessing such property, cost of reproduction is a proper element to consider.

8. The claim that the railroad franchise was included in the valuation of the board—*Held* not supported by the evidence.

9. In assessing property, including all the terminal yard and water-front property of a railroad, other property adjoining its main stem, and land used for car storage and similar railroad purposes, a rule of valuing railroad property where railroading was unprofitable at or below ordinary values, and where railroading is profitable at more than such ordinary values, is, if applied to all railroad property, a uniform rule under the constitutional requirement.

10. The fact that neighboring property is valued at less than true value does not entitle a railroad, whose property is assessed at its true value, to have its valuation lessened on account of the undervaluation of its neighbor's property.

11. In assessing property, including all of the terminal yard and water-front property of a railroad, the admission of evidence of the valuation of terminal properties of other railroads as a criterion, while irregular, was harmless, the finding being supported without that evidence.

12. Under the provision of section 13 of the Railroad Tax act, which provides that if it shall appear that any assessment is excessive or insufficient, the court may reduce it or increase it, or refer it back to the board of assessors, it is optional with the Supreme Court as a matter of judicial discretion to send back excessive valuations or to make such revaluations itself.

13. The extension of the pier line in the Hudson river in the year 1913 did not confer a title to the land under water between the old pier and new pier lines until it was reclaimed.

14. An increase of approximately seventy-five per cent. of the additional area valued as upland, for the mere privilege of reclaiming land under water—*Held* unreasonable.

---

On four writs of *certiorari* to review the reassessment of "second class" railroad property for the year 1911, and the assessment of the same property for the years 1912, 1913 and 1914, respectively.

Before Justices PARKER, MINTURN and KALISCH.

For the prosecutor, *Robert J. Bain* (*Gilbert Collins* and *George S. Hobart* on the brief).

For the defendants, *John R. Hardin*.

The opinion of the court was delivered by

PARKER, J.   The assessments for all the years mentioned relate to precisely the same property with the exception of 1914.   Generally speaking, the property includes all of the terminal yard and water front at Harsimus in Jersey City as used by the Erie Railroad Company, and other property adjoining the main stem in lower Jersey City, also at the west end of the tunnel and cut, and land used for car storage and similar railroad purposes on and adjoining the Hackensack meadows.

The valuation fixed by the state board for 1911 was brought before the Supreme Court on *certiorari* and was there affirmed. 85 *N. J. L.* 536.   On review in the Court of Errors and Appeals it was reversed (86 *Id.* 593), and that court held distinctly that it was the duty of the Supreme Court to examine the evidence and reverse in case of "palpable error" appearing.   The reversal in the Court of Errors and Appeals went on the ground that all the evidence appearing in the case showed a lower valuation, and that the state board were not entitled to use their "personal knowledge" of values as a basis of a finding while refusing to state or be examined and give testimony as to what that knowledge was and how they acquired it.

The case was remitted to the Supreme Court and that court then directed a reassessment with leave to take further testimony on valuations.   When the matter was again opened before the board, prosecutor objected to further testimony, and now makes the point that it was inadmissible.   So to hold would be to overrule the express direction of this court which appears to have been made in obedience to the plain intent of the opinion in the Court of Errors and Appeals and it would have been error if the assessors had excluded it.

This point being settled, counsel have so arranged the evidence by various stipulations that we consider all four years on the same evidence, except that in 1914 there was an increase in water front valuations because of extension of the pier line by the war department, which must be dealt with separately.

There are certain legal points which may as well be dealt with first, so as to lay a foundation for consideration of the facts.

It is first asserted that the valuations generally were ascertained and fixed by the application of an arbitrary mutiple. This appeared to be a fact when the 1911 case was before the Court of Errors and Appeals. It is explained more or less satisfactorily now. Two of the commissioners, Messrs. Record and Hendrickson, took the stand as witnesses. Both swore and most credibly, to long study and experience in appraising this class of property. They qualified as "experts" in the legal sense because of this special study. There were three principal questions to be practically treated: (1) What was the value of the various parcels *per se* for average business or other purposes? (2) Did they have any greater value for railroad purposes irrespective of railroad franchise, and if so, how much? (3) In connection with (2), was any greater value imparted to them because assembled into a connected whole appropriate to a railroad terminal, and if so, what? Both Messrs. Record and Hendrickson, as their testimony seems to indicate, testified from experience to the increment of value due to assembling and availability for special use. It is now argued that such an element of value cannot be considered, and the United States Supreme Court case of *New York City* v. *Sage,* 36 *U. S.* 25, is relied on. But we agree with counsel for defendants that it is not on the point, for it is a condemnation case and relates to the value of an outside tract before assemblage, a very different thing from an integral part after assemblage. It is elementary that in combining two or more tracts of land for a purpose requiring both or all together, the value of the whole may well be more than the total of the parts separately. So Chief

Justice Beasley, in effect, said in *Central Railroad Co.* v. *State Board of Assessors,* 49 *N. J. L.* 1. If the mutiple is in fact arbitrary, of course it is presumably erroneous, but if the evidence indicates that it is based on a reasonable consideration of facts, it is not made arbitrary because it happens to be a mathematical constant. See *Wayne Township* v. *Laflin & Rand Co.,* 76 *Id.* 175.

Next it is insisted that the lands under water should have been joined to the upland for assessment and not segregated into separate tracts. The answer is that if the lands under water are owned by the taxpayer, either method is allowable and some discretion must be accorded to the board. *Jersey City* v. *Board,* 73 *N. J. L.* 164, 166; *S. C.,* 75 *Id.* 571; *Long Dock Co.* v. *Board,* 87 *Id.* 22. If it is owned land, whether under water or not, it is assessable as such; but if only a right to reclaim not exercised, it may be regarded as an increment of value to the shoreward property. *Ibid.* This will appear presently in connection with the extended pier line questions.

The next point is numbered IV., and is a complaint of double increment because both upland and riparian lands were valued as adjacent to tidewater. We fail to see why the element of adjacency or proximity or accessibility to tidewater may not extend within reasonable limits, more or less indefinitely inland as an element of value. Where questions of convenient storage and transportation are involved, situations with regard to tidewater and accessibility thereto become of great importance.

Point V. is covered by what has been said under the second point herein discussed.

Point VI. is, that the valuation is based in whole or part on the value of other lands not similarly situated. The practical complaint is that lands in the "business" section of Hoboken and Jersey City were considered. We fail to see why, for purposes of comparison, all the land in lower Jersey City and Hoboken, should not be considered. It is impossible to secure identical conditions. What is looked for is substantially similar conditions. There is at least enough similarity along

this water front to justify a comparison of values. *Packard* v. *Bergen Neck Railway Co.,* 54 *N. J. L.* 553; *Manda* v. *Orange,* 82 *Id.* 686, 688.

VII. Cost of reproduction. That this is properly an element to consider we think needs no argument.

VIII. brings up the real point, viz., that the valuation fixed by the board is inseparably connected with the franchise. The board says in effect that it is not, and we think prosecutor has failed to show the contrary. This is a great terminal property opposite New York City, and which, while in fact connected with the Long Dock railroad, might be connected with any other railroad now operating from the Jersey side, or that might be organized so to operate. If the Erie Railroad Company should go out of business, it could be used for a terminal connecting with all the railroads terminating between Communipaw and Weehawken. Taken by itself it is a great unified tract with deep water in front and railroad communications behind. We think it is idle to argue, as do prosecutor's experts, that it is to be split into two, or three, or four or more zones, each to be valued separately. Every part of this main tract depends for its value in some measure on every other part. There are tracts of land elsewhere that are worth more when cut up into building lots, and there are also tracts worth more because assembled and peculiarly adaptable to business. This is one of the latter class.

Point IX. is, that the valuations were not made under a uniform rule, as required by the constitution. This is predicated on the testimony of Mr. Record, one of the board, that as a matter of practice they valued railroad property where railroading was unprofitable, at or below ordinary values of adjacent property, and where railroading is profitable, at more than such ordinary values. We are not at present concerned with the practical fairness of this method, but only with the uniformity of the rule. Manifestly, if applied to all railroad property, it is uniform, and we think it is quite conceivable that property affected by a railroad use is more valuable in some localities than in others. The test is, whether it is valued as railroad property and by uniform rules applicable

thereto. If the argument on this point is sound, the valuation of all railroad property in the state should be fixed by ascertaining its value for general purposes, and adding some fixed increment for railroad use; a proceeding which, on account of its arithmetical character, would undoubtedly result in much false valuation. This is not the uniformity contemplated by the constitution.

The tenth point is, that "The assessments were made at a rate in excess of the rate of assessment upon property of like character and similarly situated and were not in the same relative proportion of true value as that by which other property in the same taxing district was assessed, and said assessments are in excess of and disproportionate to the assessments placed upon the property of other owners in said taxing district and of owners of the same class of property contributing to the common burden of taxation." This point, when developed, amounts to this—that the railroads are assessed at what the board considered "true value" whereas private lands in the neighborhood were assessed at varying percentages less than true value. The argument is that the assessments on railroad land in Jersey City are, to use the language of the brief, "not in the same relative proportion of true value as that by which other property in the same taxing district was assessed." The inference is that if other property was undervalued, railroad property should also have been undervalued to the same extent. We know of no authority for this rule, and counsel cite none. On the contrary, the language of the constitution, of the statutes and of the cases has been uniform in reiterating the true value rule. It is true that local assessors often adopted in practice a sort of undervaluation rule, substantially uniform for a taxing district, and this while illegal would work no practical injustice if uniformly applied throughout the county and state, but it was not, and advantage was taken of it to evade the just apportionment of county and other taxes affecting more than one district. It was to remedy this that the county tax board legislation was adopted, which, among other things, provided for equalization of valuations as between in-

dividuals and also taxing districts. *Pamph. L.* 1906, *p.* 210; *Comp. Stat., p.* 5115 *et seq.* Valuation at true value was laid down by section 2 as the primary and fundamental duty of the board. The same rule is laid down in the Railroad Tax act. *Comp. Stat., p.* 5264, *pl.* 447. If the legislature has provided no machinery enabling a railroad whose property is assessed at true value to compel the undervaluation of neighboring property to be raised to its true value, the proposition to lower the railroad value may appeal to a sense of fairness, but is not legally sound. *Central Railroad Co.* v. *Board,* 49 *N. J. L.* 19.

The eleventh point in the brief raises certain questions of evidence.

(*a*) The sale price of other lands in the neighborhood not similar as to conditions. This is covered by what has already been said under point VI.

(*b*) That the valuation of the Pennsylvania and Lackawanna terminals was admitted as a criterion. The fact that they were valued by the board was admissible as a basis for the qualifications of Messrs. Hendrickson and Record as witnesses. Assuming the irregularity of the amount of valuation as a criterion, it was something of which the board necessarily had personal knowledge. Their finding is fully supportable in this court, except as hereafter noted, without that evidence. We consider the error, if error there was, harmless.

(*c*) Evidence that Harrison Williams represented the Erie Railroad Company, identified for the purposes of this case with the Long Dock Company, prosecutor, and that he assented to the valuation of 1911. We do not find it necessary to consider this evidence either. Of course the fact was fully within the knowledge of the board. We incline to think that when Mr. Williams was more or less formally accredited to the board as an agent of prosecutor specially interested with the conduct of its real estate and taxation matters, he was at least held out as empowered to deal with those matters in such a way as to bind his principal, and that admissions by him in the course of negotiation and discussion, not made without prejudice, would be competent evidence. We have

ourselves not considered them in ascertaining whether there was palpable error in the findings of the board.

This brings us to the question of the sufficiency of the evidence to support the valuations of the respective parcels of land, which are discussed in detail under point I. of prosecutor's brief. Our duty in this regard is pointed out in section 13 of the Railroad Tax act of 1888, as expounded by the Court of Errors and Appeals in *Long Dock Co.* v. *State Board,* 86 *N. J. L.* 592, 594. It appears to be different from the duty existing under the act of 1884, as viewed by Chief Justice Beasley in the *Central Railroad Case,* 49 *Id.* (at *pp.* 3, 4). The requirement that "if it shall be made to appear that any assessment is  *  *  *  excessive or insufficient, the court shall correct the same  *  *  *  and reduce or increase it as may be just, or refer it back to the board of assessors," makes it optional with this court as a matter of judicial discretion to send back valuations deemed excessive for revaluation, or itself make such revaluation. The general inadvisability of this court resolving itself into a reviewing board of tax valuation is pointed out by Chief Justice Beasley in the Central railroad case last cited.' But this litigation has been before the courts for several years and ought to be settled so far as an ascertainment of facts can settle it. Accordingly, we have examined the evidence bearing on the several parcels of land assessed, and finding that in some cases they are palpably excessive, have ourselves fixed what we deem a reasonable valuation in view of the principles above enunciated. We subjoin a list of the tracts and our findings on the valuations thereof imposed by the board. So far as the valuations of the board are herein held excessive, they will be reversed and revalued in our judgment according to the figures stated; otherwise the assessment will be affirmed.

There was an additional value placed by the board on the water front tracts for 1914 because of the extension of the pier line in the Hudson river in 1913. This did not confer a title to the land under water between the old and new pier lines, until the land is reclaimed. *Long Dock Co.* v. *Board,*

*supra.* It was further held in that case, that the addition, if any, to the value of the upland should be taxed with the upland. The board undertook to add to the upland value what amounted to one dollar per square foot of the area included between the old and new pier lines. Whether any increase in the upland value is supportable on the evidence, we think is doubtful; but we are in no doubt that an increase approximately equal to seventy-five per cent. of the additional area valued as upland, for a mere privilege, is out of all reason, and as there is nothing before us as a proper basis for the valuation of the increment, if any, the amount of increase on this account will go back to the board. This results in a reversal of the 1914 tax on all water front properties affected, irrespective of the general revaluations placed by us on some of them, which form a basis for the 1914 value to which may be added the increment for pier line extension if any.