RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0009p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

DARRYL PAUL DUNCAN,

*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

No. 06-5021

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 05-01265—James D. Todd, District Judge.

Submitted: October 31, 2008

Decided and Filed: January 9, 2009

Before: MARTIN, BATCHELDER, and DAUGHTREY, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** David W. Camp, LAW OFFICE OF DAVID CAMP, Jackson, Tennessee, for Appellant. R. Leigh Grinalds, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

MARTIN, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. BATCHELDER, J. (p. 8), delivered a separate opinion concurring in the result.

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Circuit Judge. This case presents the question whether the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), applies retroactively on collateral review to sentences imposed before *Booker* but after the Court decided *Blakely v. Washington*, 542 U.S. 296 (2004). We hold that it is not retroactive and therefore affirm petitioner Darryl Duncan's sentence.

In 2002, Duncan was stopped by an officer who knew of Duncan's outstanding warrants. The officer approached Duncan, determined he had a gun, and arrested him. In 2004, Duncan pleaded guilty to being a felon in possession of a firearm. In calculating the appropriate Sentencing Guidelines range, the sentencing judge cited Duncan's criminal history and stated that "since armed career criminal applies, I'm stuck with a guideline range of 188 to 235 months." The judge gave Duncan 188 months, the lowest available sentence under the Guidelines, "because the only reason [he] got up into that range was because [he was an] armed career criminal." The judge observed that without the armed career criminal guideline Duncan "would have been in the 70-87 month range" and that 188 months was the "minimum that [was] available." In September 2005, Duncan moved pursuant to 18 U.S.C. § 2255 for the district court to vacate his sentence; the court denied the motion. This Court then granted Duncan a "certificate of appealability with respect to the issue of whether [he] is entitled to be resentenced in the wake of *Booker*." We thus address whether *Booker* applies retroactively to sentences imposed after the Supreme Court decided *Blakely*.

This question's resolution matters to Duncan because if *Booker* applies retroactively he is entitled to resentencing. Duncan preserved his Sixth Amendment challenge, and it is not dispositive that he suffered no direct constitutional violation because his Guidelines range would have been the same absent any judge-found facts. This is because the Supreme Court in *Booker* consolidated the cases of Booker and Fanfan and ultimately invalidated both their sentences. While Booker's sentence was improper because it had been increased on the basis of judge-found facts not submitted to a jury, *Booker*, 543 U.S. at 244, "the Court held that the district court had violated Fanfan's statutory right to be sentenced under the advisory guidelines," "because Fanfan was sentenced under the erroneous assumption that the guidelines were mandatory," and thus he could seek "resentencing under the advisory guidelines." *United States v. Hochschild*, 442 F.3d 974, 980 (6th Cir. 2006).

In other words, a defendant "has both constitutional and statutory rights under *Booker*," *Hochschild*, 442 F.3d at 980, and defendants sentenced under the erroneous belief that the guidelines are mandatory suffer non-constitutional *Booker*-error. *United States v.*

*Barnett*, 398 F.3d 516, 524-25 (6th Cir. 2005).[1] There is every indication here that the sentencing judge felt constrained by the mandatory guidelines, and, post-*Booker*, defendants have the right to individualized sentencing in light of the statutory sentencing factors, 18 U.S.C. § 3553, because "as a general matter, courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines." *United States v. Kimbrough*, 552 U.S. ___, 128 S.Ct. 558, 578 (2007) (internal quotations and citations omitted).

So, we must determine whether *Booker* is retroactive back to *Blakely*. In *Teague v. Lane*, 489 U.S. 288 (1989), and subsequent cases, the Supreme Court explained the framework for determining when rules apply retroactively to final criminal judgments.[2] Under *Teague*, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases still on direct review. *See Griffith v. Kentucky*, 479 U.S. 314 (1987). Yet a "new rule" also applies retroactively in a collateral proceeding if (1) the rule is substantive or (2) the rule is a "watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004) (quotations omitted).

The first question is whether *Booker*, in light of *Blakely*, applied an old rule or announced a new one. A case announces a new rule when "it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 489 U.S. at 301. A new rule is further defined as "a rule that . . . was not dictated by precedent existing at the time the defendant's conviction became final," *Schriro*, 542 U.S. at 352,

---

[1] *See also Gall v. United States*,128 S. Ct. 586, 597 (2007) ("Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard. It must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, *treating the Guidelines as mandatory*, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range.") (emphasis added).

[2] It is not entirely clear that *Teague*'s framework is appropriate for federal habeas petitions under 18 U.S.C. § 2255 because many of the comity and federalism concerns animating *Teague* are lacking. *See Valentine v. United States*, 488 F.3d 325, 341 (6th Cir. 2007) (Martin, J., dissenting). But it has been this Court's practice to apply *Teague* to § 2255 petitions, and we adhere to it today.

and a decision does not announce a new rule when it is "merely an application of the principle that governed" a prior Supreme Court case. *Teague*, 489 U.S. at 307.

We have previously held that *Booker* is not retroactive back to the time that the Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *see Valentine v. United States*, 488 F.3d 325 (6th Cir. 2007), but the *Apprendi* line of cases is long. Logically, at some point in this chain – stretching from *Apprendi* to *Ring v. Arizona*, 536 U.S. 584 (2002), and through *Blakely, Booker*, *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007), *Gall v. United States*,128 S. Ct. 586, 597 (2007), and *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007) – the rule *Apprendi* announced must stop being a new rule in every varying application and instead must become an old one that applies on collateral review. Duncan argues that this switch occurred after *Blakely* but before *Booker*; the government disagrees, though it need not specify the exact break.

Duncan is right that the argument that *Blakely* dictated *Booker* is considerably stronger than the argument that *Apprendi* did. Although the Supreme Court ignited the *Apprendi* revolution with the rule announced there – "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," *Apprendi*, 530 U.S. at 490 – it was *Blakely* that clarified the meaning of "statutory maximum": "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." 542 U.S. at 303 (emphasis in original). And when the *Booker* Court struck down the federal Sentencing Guidelines, it observed that as "the dissenting opinions in *Blakely* recognized, there is no distinction of constitutional significance between the federal Sentencing Guidelines and the Washington procedures at issue in that case." *Booker*, 543 U.S. at 233.

Nevertheless, before *Booker* was handed down (but after *certiorari* had been granted) a majority of this Court held that *Blakely* did not require us to strike down the federal Sentencing Guidelines. *United States v. Koch*, 383 F.3d 436 (6th Cir. 2004) (en banc). In *Koch*, though we observed that "[i]t may be that the trajectory of *Apprendi*,

*Ring,* and *Blakely* will end with a nullification of the Guidelines," we declined to do so for prudential reasons. *Id.* at 442. Specifically, we observed that lower courts should not overrule Supreme Court decisions – even when their reasoning has been undermined – and we interpreted *Edwards v. United States*, 523 U.S. 511 (1998), as established precedent upholding the Guidelines against a Sixth Amendment challenge. We also relied on the fact that the sentencing scheme struck down in *Blakely*, although identical in effect to the Federal Guidelines, differed in form: the sentencing scheme struck down in *Blakely* was promulgated by Washington's legislature while the federal Guidelines were promulgated by the Sentencing Commission, although we admitted that both had the force of law and both similarly bound courts. *Koch*, 383 F.3d at 439 (citing *Stinson v. United States*, 36 U.S. 36, 42 (1993)).

Of course, in *Booker*, the Supreme Court stated that *Edwards*'s holding was not germane to deciding whether or not the Guidelines were unconstitutional, *Booker*, 543 U.S. 240-41, and it further held that "the fact that the Guidelines were promulgated by the Sentencing Commission, rather than Congress, lack[ed] constitutional significance." *Id.* at 237. This latter conclusion was informed by the Court's prior decision in *Mistretta v. United States*, 488 U.S. 361, 371, 393-94 (1989), in which the Court, in upholding the Guidelines against delegation and separation-of-powers challenges, observed that the Sentencing Commission was "quasi-legislative" in function.[3]

And, there are pragmatic reasons to believe that *Blakely* dictated *Booker*. Justice O'Connor, whose *Blakely* dissent prophesized the Guidelines's demise, described the *Blakely* decision at the Ninth Circuit judicial conference as a "number ten earthquake."[4]

---

[3]Although we ask whether "reasonable jurists could differ as to whether precedent compel[led] the sought-for rule," *Beard v. Banks*, 542 U.S. 406, 416 n.5 (2004), that inquiry does not compel us to simply count dissenting Justices or lower court judges. Indeed, the *Teague* Court's primary example of a case that did not announce a new rule was *Francis v. Franklin*, 471 U.S. 307 (1985), which was a 5-4 decision holding that a jury instruction allowing the jury to presume malice unconstitutionally relieved a state of its burden of proof beyond a reasonable doubt. Three years after *Francis* was decided, the Court, in *Yates v. Aiken*, 484 U.S. 211, 216-17 (1988), *quoted in Teague*, 489 U.S. at 307, held that Francis did not announce a new rule because it "was merely an application" of principles the Court had previously established. Justice O'Connor, *Teague*'s author, dissented in *Francis*.

[4]Lyle Denniston, *Justices Agree to Consider Sentencing*, N.Y. TIMES, Aug. 3, 2004, at A14.

This was not hyperbole. Within a month of *Blakely*, thousands of criminal appeals challenging the federal Sentencing Guidelines were filed, several federal courts had struck down some or all of the Guidelines, and the Acting Solicitor General sought expedited review in the Supreme Court of two decisions questioning the Guidelines's constitutionality. *See, e.g.,* Douglas A. Berman, *Reconceptualizing Sentencing*, 2005 U. CHI. LEGAL F. 1, 34-36 (2005). *Blakely*'s significance for the mandatory Guidelines's future viability could not be missed: the "entire federal criminal justice system came to a standstill in anticipation of the Court's decision in *Booker*." *United States v. Paladino*, 401 F.3d 471, 485 (7th Cir. 2005) (Ripple, J., dissenting). After *Blakely,* the writing was on the wall that the Guidelines were doomed in a way that was not the case after *Apprendi* was decided. Indeed, this case is yet another of the *Blakely* earthquake's many reverberations, and thus it is at least arguable that *Booker* should operate retroactively back to when the Supreme Court decided *Blakely*.

Yet this case does not arise in a vacuum. Our holding in *Koch* that *Blakely* did not require us to strike the Guidelines down, though ultimately proven incorrect, nevertheless gives us great pause in considering Duncan's argument. And though they were decided in different postures than this case and thus do not directly control our decision today, the sweeping language of *Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005) and *Valentine*, 488 F.3d at 330, counsels against holding that *Booker* merely announced an old rule. We thus hold that *Booker* announced a new rule and did not merely apply the rule announced in *Blakely*.

*Summerlin* forecloses Duncan's remaining avenues for retroactivity: that either the *Booker* rule is "substantive" or that it announced a "watershed rule of criminal procedure." In *Summerlin*, the Supreme Court held that *Ring* – one of the many cases following *Apprendi* – is not retroactive on collateral review. *Ring* held that defendants are entitled to a jury trial on all aggravating factors possibly leading to the imposition of the death penalty. 536 U.S. at 609. In *Summerlin*, the Court determined that *Ring* did not "alter[] the range of conduct or the class of persons that the law punishes," and thus was not a "substantive" rule. *Summerlin*, 542 U.S. at 353. Instead, *Ring* merely

"allocate[d] decisionmaking authority" by requiring a jury rather than a judge find the facts essential to punishment and thus was a "prototypical procedural rule[.]" *Id.* This logic equally applies to both *Blakely* and *Booker*, so the rules announced in both are, like the rule announced in *Ring*, procedural.

Second, *Summerlin* held that *Ring* did not announce a "watershed rule of criminal procedure" because the Court could not determine whether juries were so much more accurate than judges such that the change brought about by *Ring* "implicat[ed] the fundamental fairness and accuracy of the criminal proceeding"; indeed, the *Summerlin* Court found that it could not say either way: the evidence was simply "too equivocal." *Id.* at 355. Moreover, the *Booker* remedial opinion left sentencing authority, albeit with increased discretion, with sentencing judges when it made the Guidelines "effectively advisory," so *Booker* could not have announced a "watershed rule."

Finally, informing our decision today is the recognition that to accept Duncan's argument that *Booker* operates retroactively back to *Blakely* would create a split with our sister circuits where one did not exist before, *see e.g., McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005), which we are wary of doing. Thus, we decline Duncan's invitation to create this split and hold that the Supreme Court's decision in *Booker* is not retroactive on collateral review for sentences imposed after *Blakely*. We therefore AFFIRM Duncan's sentence.

---

**CONCURRING IN THE RESULT**

---

ALICE M. BATCHELDER, Circuit Judge, concurring.  Because I believe that Duncan's claim is entirely governed by our decisions in *Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005) and *Valentine v. United States*, 488 F.3d 325 (6th Cir. 2007), I concur in the result reached by the lead opinion.