**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Daniel Ross MARTIN and Charles Ross Martin, Defendants–Appellants.**

**No. 00–6164, 00–6165.**

United States Court of Appeals, Sixth Circuit.

July 9, 2002.

---

* The Hon. Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

Before SILER and CLAY, Circuit Judges; OBERDORFER, District Judge.*

CLAY, Circuit Judge.

This is a consolidated appeal. In Case No. 00–6164, Defendant, Daniel Ross Martin ("Daniel"), appeals from the judgment of conviction and sentence entered by the district court on August 23, 2000, following Daniel's guilty plea conviction for two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), as well as from his jury trial conviction for one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), for which Daniel

was sentenced to a total of fifty-one months' imprisonment. In Case No. 00–6165, Defendant Charles Ross Martin ("Charles"), appeals from the judgment of conviction and sentence entered by the district court on August 23, 2000, following Charles' guilty plea conviction for two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), as well as from his jury trial conviction for one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), for which Charles was sentenced to a total of forty-six months' imprisonment.

On appeal, each Defendant limits his claims to sentencing issues, wherein each Defendant raises the same four challenges to the application of the guidelines, while Daniel raises an additional challenge to the constitutionality of the guidelines as a whole, and Charles raises an additional challenge claiming that the district court erred in failing to grant a downward departure for his age (seventy-two years old at the time) and his poor health.

For the reasons set forth below, we now **AFFIRM** the judgment of conviction and sentence in Case No. 00–6164 as well as Case No. 00–6165.

## STATEMENT OF FACTS

### Procedural History

Defendants were named in a nine-count superseding indictment charging them with various violations of the drug and gun laws. Charles entered a plea of guilty to counts five and eight of the superseding indictment, and Daniel entered a plea of guilty to counts six and nine of the same indictment. However, each Defendant de-

---

* The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

nied possession of a Smith and Wesson .44 magnum revolver that was found near their residence, and did not plead guilty to possession thereof. The charge for possession of the Smith and Wesson was contained in count five of Charles' indictment, and in count six of Daniel's indictment. Defendants went to trial on the remaining counts.

Defendants were found guilty of count two of the superseding indictment alleging possession with intent to distribute marijuana and aiding and abetting, and were acquitted on counts three and seven. The trial court dismissed count four at the close of the government's proof. The jury was unable to reach a unanimous verdict with respect to count one, and the United States moved to dismiss that count after the other verdicts were returned.

### Facts

On September 30, 1999, Agent Jack Damoth and other agents of the Tenth Judicial Drug Task Force served a search warrant at the residence of Charles and Daniel in McMinn County, Tennessee. Agent Damoth informed Charles that he had a search warrant and the agents were there to search for marijuana and methamphetamine. Charles told Agent Damoth that he would show him what he had, led Damoth to a bedroom area, and reached inside a dresser drawer in an apparent attempt to grab a pistol. There were three loaded pistols in the drawer, and four other weapons were also found in Charles' bedroom. Agent Damoth testified that in addition to the several firearms recovered from the Martin residence, he recovered $3,909 from Charles' person, $1,900 from the residence, and $217 from Daniel's person. In addition to the money that was recovered from the persons of Charles and Daniel, and from the residence, Defendants stipulated that

Charles had deposited $4,000 in the National Bank in Athens, Tennessee on February 25, 1998, and $9,300 on March 10, 1999.

Agent Damoth further testified that he recovered a cardboard box which had the residue and odor of marijuana in it, as well as a styrofoam cooler with marijuana residue and a strong scent of marijuana in it. Both objects were found inside of the house which was approximately 1500 square feet in size.

Agent Damoth also recovered items from outside of the residence. For example, Damoth testified that he recovered a loaded firearm (a .44 caliber Smith and Wesson pistol wrapped in blue cloth) in an ammunition can in the woods behind the Martin residence, with grips which matched the pistol grips that Damoth had recovered from Charles' bedroom. Damoth further recovered another ammunition can containing marijuana near a well-worn trail leading from behind the house. The parties stipulated that the amount of marijuana recovered was 182.8 grams.

The government also called as witnesses two individuals who had dealings with Defendants, Danny Casteel and Lisa Stewart. Casteel testified that he lived approximately three-quarters of a mile from Defendants and that he had known them for approximately twenty years. Casteel testified that during the past two preceding years, he had purchased marijuana and methamphetamine from Defendants. Casteel further testified that he had seen Charles with large sums of money—possibly $5,000 to $10,000—on several occasions.

Stewart testified that she had known Defendants for approximately three and one-half years, and that she had purchased marijuana and methamphetamine from Daniel in the past at Defendants' residence. Stewart also testified that in the

past she had called Daniel requesting to purchase marijuana, but he informed Stewart that it was too late or that he was not feeling well enough to go into the woods to retrieve it.

The government called other witnesses who testified as to drug paraphernalia found in the home. For example, Officer Bobby Queen with the Cleveland Police Department testified that a half-full bottle of Super Shine B, a vitamin B6 powder used as a cutting agent in connection with selling methamphetamine and cocaine, was found in Daniel's dresser drawer. Queen also testified that two pairs of tweezers, a film cannister, a .38/.357 Rossi lever action rifle, a Glennfield or Marlin .30–30, and an FEG handgun, were found in Daniel's bedroom.

In the presentence report ("PSR"), the probation officer found Defendants' base offense level should be increased by four levels because they possessed a total of fourteen weapons in and around the home and property. Defendants each objected to the four-level increase, arguing that each Defendant should only be held accountable for the firearms actually possessed in or around his own bedroom, not for the total number of firearms in the residence and outside the residence. Each Defendant also objected to not receiving a downward adjustment for acceptance of responsibility, and further objected to the four-level enhancement under USSG § 2K2.1(b)(5) for possession of a firearm in connection with another felony offense. Defendants further objected to the two-level increase under USSG § 2D1.1(b)(1) for possession of the firearm in connection with a drug trafficking offense.

At the sentencing hearing, the district court found that neither Defendant was entitled to a reduction for acceptance of responsibility; that the two-level increase under § 2D1.1(b)(1) would apply; the four-level enhancement under § 2K2.1(b)(5) for possession of firearms in connection with another felony offense would apply; and that the total number of firearms applicable to each Defendant was fourteen, which added another four-level increase to the base offense level under § 2K2.1(b)(1)(D).

Charles argued at sentencing that he was eligible for a downward departure based upon his physical condition and advanced age. The district court recognized that there were circumstances under which the court could depart from the guidelines based upon physical condition, but that Charles did not meet the criteria for the departure.

The district court sentenced Charles to a term of forty-six months' imprisonment, and sentenced Daniel to a term of fifty-one months' imprisonment. These timely appeals ensued.

## DISCUSSION

This Court applies a clearly erroneous standard of review to the district court's factual findings, and while giving due deference to the district court's application of the guidelines to those facts, it renders *de novo* review of the district court's legal conclusions. *See United States v. Robinson*, 152 F.3d 507, 509 (6th Cir.1998).

### I. WHETHER THE DISTRICT COURT ERRED IN DENYING DEFENDANTS A REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY PURSUANT TO USSG § 3E1.1?

Each Defendant argues that the district court erred in refusing to grant a two-level reduction for acceptance of responsibility because each pleaded guilty to the two most serious crimes for which they were convicted. Each Defendant argued for the reduction on this basis before the district court at sentencing. In rejecting

Defendants' arguments, the district court "respectfully opined that neither of these defendants who had a full trial here in federal court has accepted responsibility for their, for the actions or full responsibility for the actions for which they were convicted, and that includes the drug charges. So, I believe that that disposes of the issue." (J.A. at 364.)

■ "The determination of whether a defendant has accepted responsibility is a factual question for the district court which should be accorded great deference and should not be disturbed unless clearly erroneous." *United States v. Guthrie*, 144 F.3d 1006, 1011 (6th Cir.1998). The Commentary to USSG § 3E1.1 provides that the adjustment is not intended to apply to a defendant who puts the government to the expense of proving its case. *See* USSG § 3E1.1 comment. (n.2). The Commentary also provides that a defendant who necessitates a trial may still receive a downward departure, but this is reserved for the "rare" situation where the defendant "goes to trial to assert and preserve issues that do not relate to factual guilt" such as when the defendant "make[s] a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct." *Id.* This "rare" situation does not exist here, and we therefore conclude that the district court did not err in denying Defendants a two-level reduction for acceptance of responsibility. *See United States v. Hough*, 276 F.3d 884, 895 (6th Cir.2002) (affirming a district court's refusal to grant a two-level reduction for acceptance of responsibility where the government was forced to try its case against the defendant even though he had accepted responsibility for some of his criminal con-

duct); *see also United States v. Chambers*, 195 F.3d 274, 277–78 (6th Cir.1999) (holding that a defendant is required to admit responsibility for all offenses eligible for a reduction under the acceptance of responsibility guideline). Daniel's attempt to distinguish *Chambers* is unavailing where, as the district court found, the government was required to try Defendants on the drug charge for which they were convicted and for which they have never accepted responsibility or showed remorse.

## II. WHETHER THE TRIAL COURT ERRED IN IMPOSING A TWO–LEVEL INCREASE PURSUANT TO USSG § 2D1.1(b)(1) FOR POSSESSING A FIREARM DURING A DRUG OFFENSE?[1]

Following arguments by both Defendants and the government at sentencing, the district court stated as follows regarding the two-level enhancement under § 2D1.1(b)(1):

> [T]he guideline provision application notes, Application Note 3 to 2D1.1 says that the enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. The Court's judgment, based upon everything that I heard, it, in fact, is clearly probable that the firearms were connected with the drug trafficking, so it might have had other purposes as well, but they did serve a purpose in with the drug trafficking. So, that's what I find by a preponderance of the evidence on that enhancement . . . .

(J.A. at 368–69.) Defendants argue that the district court erred in its finding because both were acquitted of the § 924(c)

---

1. Because Defendants raise this issue in their brief on appeal, we shall consider it here. However, the two-level increase had no effect on Defendants' sentences in light of the dis-

trict court's four-level increase to each of the Defendants' base offense level under USSG § 2K2.1(b)(5).

charge brought against them. We disagree with Defendants' claims.

Section 2D1.1(b)(1) of the sentencing guidelines directs a sentencing court to increase a defendant's base offense level by two levels "[i]f a dangerous weapon (including a firearm) was possessed[.]" USSG § 2D1.1(b)(1). Specifically, this enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." USSG § 2D1.1(b)(1) comment. (n.3). However, § 2D1.1(b)(1) does not automatically apply once the government establishes that a dangerous weapon was possessed. *See United States v. Garner*, 940 F.2d 172, 175 (6th Cir.1991). Instead, the government must first establish by a preponderance of the evidence that 1) the defendant actually or constructively possessed a weapon and 2) such possession was during the commission of the offense. *See United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir.1996). " 'Once it is established that a defendant was in possession of a weapon during the commission of an offense, a presumption arises that such possession was connected to the offense.' " *Id.* (quoting *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir.1991)). The burden then shifts to the defendant to show that "it is clearly improbable that the weapon was connected to the offense." *Id.* (quoting USSG § 2D1.1(b)(1)).

■ Here, Defendants do not dispute that they possessed the weapons; rather, Defendants' sole argument is based on their contention that because they were acquitted of the § 924(c) charge, it could not be found by a preponderance of the evidence that they possessed the weapons during the commission of an offense. Defendants' argument is quickly quashed

where, in footnote 4 of *Hill*, this Court opined:

> An acquittal under section 924(c) does not preclude the district court from applying the enhancement under U.S.S.G. § 2D1.1(b)(1) because the substantive standard and the burden of proof at sentencing differ. *See, e.g., Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 509, 133 L.Ed.2d 472 (1995).

*Hill*, 79 F.3d at 1486 n. 4. This Court has consistently followed the pronouncement set forth in *Hill*. *See United States v. McCall*, 85 F.3d 1193, 1198 (6th Cir.1996) (finding that "an acquittal under 18 U.S.C. § 924(c) does not necessarily preclude a sentencing enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b) ... [because] the government's burden is significantly lighter for sentencing purposes"); *United States v. Duncan*, 918 F.2d 647, 650 (6th Cir.1990) (same); *see also United States v. Watts*, 519 U.S. 148, 151–52, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (holding that a court may consider conduct of which a defendant has been acquitted in determining the appropriate sentence under the sentencing guidelines). As a result, the district court did not err in applying a two-level increase under § 2D1.1(b)(1).

III. **WHETHER THE TRIAL COURT ERRED IN IMPOSING A FOUR–LEVEL INCREASE PURSUANT TO USSG § 2K2.1(b)(1)(D) INSTEAD OF A THREE–LEVEL INCREASE UNDER § 2K2.1(b)(1)(C) FOR CHARLES, AND INSTEAD OF A TWO–LEVEL INCREASE UNDER USSG § 2K2.1(b)(1)(B) FOR DANIEL BY IMPROPERLY HOLDING EACH DEFENDANT RESPONSIBLE FOR ALL OF THE WEAPONS RECOVERED?**

The district court found as follows when applying the four-level enhancement under § 2K2.1(b)(1)(D):

Well, there were 14 weapons here, as I recall, including the one that was found outside. And as I've just said in connection with the other finding, I think it's clearly probable, I guess that's the same thing as saying by a preponderance of the evidence, the evidence does show that these firearms did have a connection with or were used in connection with another felony offense. And so, I find that the four levels under ... § 2K2.1(b)(1)(D) apply.

\* \* \* \* \* \*

I do find that we're dealing with 14 weapons here, including the one outside. They all had access to them. And, although, I do recall that at the plea, you didn't commit to all of them, nonetheless, I think they're certainly all relevant conduct. And by a preponderance of the evidence, I do think that, at I do find that they were all 14 involved in the drug trafficking.

(J.A. at 370–71, 374–75.)

■ Charles argues that only nine firearms should be attributed to him thereby increasing the offense level by three under § 2K2.1(b)(1)(C), instead of by four under § 2K2.1(b)(1)(D). Daniel argues that under this section his offense level should only have been increased by two. Basically, Defendants argue that the district court should have made specific findings as to the number of firearms attributed to each. Defendants' arguments fail, and the district court did not clearly err in applying the four-level enhancement for fourteen weapons where the court could properly take into account all relevant conduct, and therefore weapons, at sentencing.

Section 1B1.3(a)(2) of the guidelines provides that other uncharged conduct may be considered by the sentencing court when it is part of the same course of conduct or common scheme as the offense of conviction. This includes conduct that may have been the subject of dismissed counts, *United ed States v. Smith*, 887 F.2d 104, 106–07 (6th Cir.1989), or even conduct underlying a count on which the defendant was acquitted. *United States v. August*, 984 F.2d 705, 713 (6th Cir.1992). A sentencing court's inquiry into, and consideration of, relevant conduct is likewise not bound by any limitations set forth in a plea agreement. *United States v. Velez*, 1 F.3d 386, 390 (6th Cir.1993).

As a result, the district court was entitled to take into account the entire supply of firearms and attribute the entire supply to each Defendant as being in their presence and under their control where the weapons were found inside the house and outside the house along with marijuana and drug paraphernalia. This is particularly so where Defendants co-habitated and the house was relatively small in size (approximately 1500 square feet), making access to all of the weapons readily available to both Defendants.

Daniel relies upon this Court's decision in *United States v. Hendrick*, 177 F.3d 547 (6th Cir.1999) in an attempt to disassociate himself from the weapons and Charles. However, Daniel's argument is unpersuasive where *Hendrick* addressed the issue of whether one defendant's criminal history could be imputed to an aider and an abettor, not the number of firearms involved in an offense. *Id.* at 550–51. Moreover, it is clear that Daniel and Charles were both involved in the marijuana enterprise, and firearms are the tools of drug trafficking, such that all of these weapons which were readily available to both Daniel and Charles should be imputed to both of them. *See Hardin*, 248 F.3d at 499.

## IV. WHETHER THE TRIAL COURT ERRED IN IMPOSING A FOUR–LEVEL ENHANCEMENT UNDER USSG § 2K2.1(b)(5) FOR POSSESSING A FIREARM IN CONNECTION WITH THE FELONY OFFENSE OF AIDING AND ABETTING THE POSSESSION WITH INTENT TO DISTRIBUTE MARIJUANA WHEN THE JURY ACQUITTED DEFENDANTS OF THE § 924(c) OFFENSE?

Defendants make the same arguments that they made in connection with their challenge to the application of § 2D1.1(b)(1); namely, that because they were acquitted of the § 924(c) charge, the district court clearly erred in applying the enhancement under 2K2.1(b)(5). Once, again, we disagree with Defendants' arguments.

> Guideline § 2K2.1(b)(5) provides that "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense," his base offense level should be increased by four levels. This section can only apply if the Government establishes by a preponderance of the evidence that the defendant possessed or used a gun in connection with another felony.

*United States v. Hardin*, 248 F.3d 489, 495 (6th Cir.2001). The difference between § 2K2.1(b)(5) and § 2D1.1(b)(1) is that the latter is "directed at an individual convicted of a narcotics offense while in possession of a weapon," while § 2K2.1(b)(5), "the flip side of the guns and drugs scenario, is directed at an individual convicted of a firearms offense, who possessed that firearm in connection with another felony offense, i.e., distribution of narcotics. Thus, while § 2D1.1(b)(1) deals with possession or presence of a weapon during the commission of a drug offense, § 2K2.1(b)(5) deals with possession of a weapon 'in connection with' another felony offense." *Id.* at 497.

In *United States v. Covert*, 117 F.3d 940, 947–49 (6th Cir.1997), this Court found that the "fortress theory" applied to § 2K2.1(b)(5), even after the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), because "*Bailey* only addressed the meaning of the term 'use' in 18 U.S.C. § 924(c), not the term 'possessed' contained in USSG. § 2K2.1(b)(5) ... [and] *Bailey* ... stated that the term 'possess' used in sentencing guideline sections, such as 2K2.1(b)(5), sweeps more broadly that the word 'use.'" The fortress theory holds that "'if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used during and in relation to a drug trafficking crime.'" *United States v. Ennenga*, 263 F.3d 499, 503 (6th Cir. 2001) (internal quotation marks omitted) (quoting *United States v. Henry*, 878 F.2d 937, 944 (6th Cir.1989)).

Here, Defendants each possessed the firearms attributed to them by the district court in connection with the drug trafficking crime where the weapons were found inside and outside of the house, as was marijuana or evidence thereof, where drug paraphernalia was found inside the house along with large quantities of cash, and where Stewart testified that Daniel would go outside to retrieve the marijuana which he ultimately sold to her. In other words, evidence existed to link the weapons found inside the house as well as the weapons found outside the house to the drug trafficking, such that it may be inferred that the weapons were possessed in connection with the felony. *See Hardin*, 248 F.3d at 499 ("The fact that the firearm

was found in the same room where the cocaine was stored can lead to the justifiable conclusion that the gun was used in connection with the felony. This Court has held many times that guns are 'tools of the trade' in drug transactions.").

Daniel attempts to avoid this conclusion by relying on the unpublished case of *United States v. Gragg,* No. 97–5118, 1998 WL 199816 (6th Cir.1998) (unpublished table decision). Daniel's argument need not be addressed inasmuch as *Gragg* is unpublished, its "correctness" has been called into doubt in binding, published authority, and it is inapposite in any event. *See United States v. Ennenga,* 263 F.3d 499, 504 (6th Cir.2001) ("As a threshold matter, we question the correctness of the *Gragg* decision. We need not concern ourselves with any perceived inconsistency, however, because *Gragg* is an unpublished case therefore not a controlling precedent.").

## V. WHETHER THE SENTENCING GUIDELINES ARE UNCONSTITUTIONAL AND VIOLATE THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS GIVEN THE OMISSION OF THE FACTORS FROM THE INDICTMENT AND THE JURY DETERMINATION BEYOND A REASONABLE DOUBT THAT THE DEFENDANTS DID NOT POSSESS THE FIREARMS DURING AND IN RELATION AND IN FURTHERANCE OF THE DRUG OFFENSE? (DANIEL'S ISSUE)

We review constitutional challenges *de novo. See United States v. Beavers,* 206 F.3d 706, 708 (6th Cir.2000).

■ Daniel argues that the sentencing guidelines are unconstitutional in the wake of the Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Dan-

iel's claim is without merit inasmuch as the *Apprendi* Court expressly noted that its ruling did not involve the sentencing guidelines. *See id.* at 2366 n. 21 ("The Guidelines are, of course, not before the Court. We therefore express no view on the subject beyond what this Court has already held.") (citing *Edwards v. United States,* 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998) (rejecting the defendants' claim that their sentence violated the Constitution through the application of the guidelines, where the ultimate sentence did not exceed the statutory maximum)). In addition, in *United States v. Williams,* 235 F.3d 858 (3d Cir.2000), this Court cited with approval the concurring opinion of the Third Circuit's Chief Judge Becker when he opined that " 'the Sentencing Guidelines are ... a constitutional mechanism for channeling the discretion that a sentencing court would otherwise enjoy.' " *See Williams* 235 F.3d at 862 (quoting *United States v. Mack,* 229 F.3d 226, 243 (3d Cir.2000) (Becker, C.J., concurring)); *see also Mistretta v. United States,* 488 U.S. 361, 391, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (finding that the sentencing guidelines enjoy unique constitutional status).

## VI. WHETHER THE DISTRICT COURT ERRED IN FAILING TO DOWNWARDLY DEPART PURSUANT TO USSG § 5H1.1 BECAUSE OF CHARLES' AGE, AND PURSUANT TO USSG § 5H1.4 BECAUSE OF CHARLES' MEDICAL CONDITIONS? (CHARLES' ISSUE)

A district court's discretionary decision not to depart downward from the guidelines is unreviewable, so long as the district court understands that it has discretion so to depart. *United States v. Ebolum,* 72 F.3d 35, 37 (6th Cir.1995).

The district court stated as follows regarding Charles' motion for a downward departure:

Okay. With respect to Mr. Charles Ross Martin, of course, there are circumstances under which the Court can depart downward for a physical condition, but § 5H1.4 makes it clear that what is required is extraordinary physical impairment, and that the departure is available in the case if its's a seriously infirmed defendant. I do not think that either of those criteria are met at this time by Mr. Charles Ross Martin.

Of course, he is in his 70s, which to me is looking younger and younger these days, but in any event, I do not, I mean, he does have some health problems, but I don't think that they are the kind that would warrant a downward departure from the guidelines in this case. And I don't think they're anything that the Bureau of Prisons cannot deal effectively with and efficiently with. And so, therefore, I respectfully decline to downward departure [sic] based upon Mr. Charles Ross Martin's health.

(J.A. at 382.)

■ Based upon the district court's findings, Charles' claim is not reviewable. *See Ebolum*, 72 F.3d at 37. The court recognized its authority to downwardly depart, recognized Charles' age and medical conditions as argued by Charles' attorney, and found that a departure was not warranted. This court is therefore without jurisdiction to consider Charles' claim. *See id.; see also United States v. Moore*, 225 F.3d 637, 643 (6th Cir.2000). In addition, Charles makes no argument on appeal why this Court should consider this issue—i.e., Charles does not argue that the district court failed to recognize its authority to downwardly depart.

## CONCLUSION

For the reasons set forth above we **AFFIRM** Defendants' judgments of conviction and sentence in Case No. 00–6164 and Case No. 00–6165.