*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0284P (6th Cir.)
File Name: 04a0284p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

  *v.*       No. 02-6278

ROBERT KOCH,
   *Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 01-00083—Joseph M. Hood, District Judge.

Argued: August 11, 2004

Decided and Filed: August 26, 2004

Before: BOGGS, Chief Judge; MARTIN, GUY,
BATCHELDER, DAUGHTREY, MOORE, COLE,
CLAY, GILMAN, GIBBONS, ROGERS, SUTTON, and
COOK, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** H. Louis Sirkin, SIRKIN, PINALES, MEZIBOV
& SCHWARTZ, Cincinnati, Ohio, for Appellant. Steven L.
Lane, UNITED STATES DEPARTMENT OF JUSTICE,
CRIMINAL DIVISION, Washington, D.C., for Appellee.

---

**ON BRIEF:** H. Louis Sirkin, Jennifer M. Kinsley, SIRKIN,
PINALES, MEZIBOV & SCHWARTZ, Cincinnati, Ohio, for
Appellant. Steven L. Lane, UNITED STATES
DEPARTMENT OF JUSTICE, CRIMINAL DIVISION,
Washington, D.C., Charles P. Wisdom, Jr., ASSISTANT
UNITED STATES ATTORNEY, Lexington, Kentucky,
Laura K. Voorhees, ASSISTANT UNITED STATES
ATTORNEY, Covington, Kentucky, for Appellee.

SUTTON, J., delivered the opinion of the court, in which
BOGGS, C. J., GUY, BATCHELDER, GILMAN,
GIBBONS, ROGERS, SUTTON, and COOK, JJ., joined.
MARTIN, J. (pp. 14-24), delivered a separate dissenting
opinion, in which DAUGHTREY, MOORE, COLE, and
CLAY, JJ., joined.

———————————

## OPINION

———————————

SUTTON, Circuit Judge. This court granted en banc
review of *United States v. Koch*, 373 F.3d 775 (6th Cir.
2004), to consider whether *Blakely v. Washington*, 124 S. Ct.
2531 (2004), requires us to invalidate the United States
Sentencing Guidelines on Sixth Amendment grounds.
Concluding that it does not, we reinstate the judgment of the
panel in this case, adopt the panel's opinion as our own and
add this opinion regarding the current validity of the
Sentencing Guidelines.

### I.

Briefly summarized, the facts are these. In 2001, Robert
Koch bought large amounts of marijuana in Arizona to sell in
Kentucky. To further his scheme, he asked Justin Davis to act
as a "frontman" who would sell drugs on Koch's behalf.
Koch supplied Davis with five pounds of marijuana on credit,
and Davis promised to repay Koch $5,000 once he had sold

the drugs. Davis, however, failed to repay the $5,000, claiming in his defense that the drugs had been stolen. Apparently suspicious of Davis's explanation, Koch took matters into his own hands.

In the early morning of April 27, 2001, Koch went to Davis's home with Patrick O'Brien, Robert Gibson and Joe Shukler. Koch and Gibson were carrying guns. Koch and Gibson knocked on the door, which Davis's roommate, Luke Hitchner, answered. Although witness accounts differ over what happened next, it is clear that before long a shoot-out began between Koch and his compatriots on the one hand and Davis and Hitchner on the other. During the shoot-out, Gibson was killed and O'Brien was permanently injured.

Koch fled the scene and was not immediately apprehended. After police learned about his drug-dealing activities and the shoot-out, they executed a search warrant at his home. There, they discovered a Beretta handgun, 31 rounds of ammunition, over $1,000 in cash, 421.5 grams of marijuana and marijuana-cultivating equipment.

A federal grand jury indicted Koch on six counts stemming from his drug-dealing and the shoot-out: (1) conspiring to possess and distribute marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1); (2) using a firearm in relation to a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(iii); (3) being an unlawful user of a controlled substance in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(3) & 924(a)(2); (4) possessing with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1); (5) possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(C)(i); and (6) being an unlawful user of marijuana in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(3) & 924(a)(2).

A jury convicted Koch on each count but the fifth one. At sentencing, the district court found that (1) Koch's drug conspiracy involved 907 kilograms of marijuana, thereby

requiring an enhanced base-offense level of 30 under U.S.S.G. § 2D1.1; (2) Koch had obstructed justice (by threatening a witness), thereby requiring a two-level enhancement under U.S.S.G. § 3C1.1; and (3) Koch had possessed a dangerous weapon, thereby requiring a two-level enhancement under U.S.S.G. § 2D1.1(b)(1). All adjustments considered, Koch faced a base-offense level of 34, which, when combined with his criminal history category (I), resulted in a sentencing range of 151-188 months. Despite this sentencing range, the court sentenced Koch to concurrent 60-month sentences on Counts 1, 3, 4 and 6 because it believed (mistakenly, it turns out) that this was the applicable statutory maximum. With respect to Count 2, the district court started with the mandatory minimum sentence of 120 months, then departed upward six levels to 188 months because it found that Koch's conduct had resulted in death (to Gibson) and significant physical injury (to O'Brien). *See* U.S.S.G. §§ 5K2.1 & 5K2.2. In view of the statutory requirement that his sentence on Count 2 run consecutively to his other sentences, Koch received a cumulative sentence of 248 months. Each of Koch's sentences in the end fell below the (congressional) statutory maximum.

Koch appealed his sentence. He argued that the district court's finding that the conspiracy involved 907 kilograms of marijuana was not supported by the evidence. He argued that the district court committed a "double-counting" error by adding two levels for his possession of a weapon. And he challenged the court's six-level upward departure on his sentence for Count 2 on numerous grounds. A panel of this Court rejected each argument and affirmed his sentence. 373 F.3d 775.

Koch filed a petition for rehearing en banc, arguing that the enhancement provisions of the Sentencing Guidelines violate the Sixth Amendment as construed in *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and that two of his sentencing enhancements (the two-level increase based on drug quantity and the six-level upward departure based on injury and death)

should be reversed. We need not decide whether Koch properly preserved these issues or whether the alleged error was harmless or plain because we conclude that *Blakely* does not require us to invalidate the Guidelines.

## II.

We are not the first court to consider this question and we will not be the last, as the Supreme Court has scheduled oral arguments on this question for October 4, 2004. *See United States v. Booker*, 2004 WL 1713654 (Aug. 2, 2004); *United States v. Fanfan*, 2004 WL 1713655 (Aug. 2, 2004). Because we cannot expect a final answer from the Court for several months and because the judges in this Circuit deserve guidance in the interim, we granted Koch's en banc petition. We now join our colleagues in the Second and Fifth Circuits, *see United States v. Mincey*, – F.3d – , 2004 WL 1794717 (2d Cir. 2004); *United States v. Pineiro*, – F.3d – , 2004 WL 1543170 (5th Cir. 2004), a majority of our en banc colleagues in the Fourth Circuit, *see United States v. Hammoud*, – F.3d –, 2004 WL 1730309 (4th Cir. 2004), and some of our colleagues in the Seventh and Ninth Circuits, *see United States v. Booker*, 375 F.3d 508, 515 (7th Cir. 2004) (Easterbrook, J., dissenting); *United States v. Ameline*, – F.3d –, 2004 WL 1635808, at *14 (9th Cir. 2004) (Gould, J., dissenting), in determining that *Blakely* does not compel the conclusion that the Federal Sentencing Guidelines violate the Sixth Amendment. As several of these opinions convincingly explain why *Blakely* does not resolve the issue and as the Court soon will give us the final word, we write briefly to emphasize three reasons for our decision.

**First**, in responding to a request that we invalidate the Sentencing Guidelines, we agree with Judge Easterbrook that "[t]his is the wrong forum for such a conclusion." *Booker*, 375 F.3d at 515. "It is always embarrassing for a lower court to say whether the time has come to disregard decisions of a higher court, not yet explicitly overruled, because they parallel others in which the higher court has expressed a

contrary view." *Spector Motor Serv. v. Walsh*, 139 F.2d 809, 823 (2d Cir. 1943) (L. Hand, J., dissenting), *vacated sub nom. Spector Motor Serv. v. McLaughlin*, 323 U.S. 101 (1944). But the "exhilarating opportunity" to anticipate the overruling of Supreme Court precedent should be resisted, *id.*, because the Court generally bears responsibility for determining when its own cases have been overruled by later decisions. *See generally Agostini v. Felton*, 521 U.S. 203 (1997).

Since 1987, when the Sentencing Guidelines were promulgated, the Supreme Court has considered numerous constitutional challenges to them, not one of which suggested their eventual demise and at least one of which gave the back of the hand to the kind of challenge raised here. To our knowledge, not one Justice has opined that the sentencing-enhancement provisions of the Guidelines violate the Sixth Amendment.

In 1989, the Court rejected an across-the-board challenge to the constitutionality of the Guidelines and to the Sentencing Commission on non-delegation and separation-of-powers grounds. *Mistretta v. United States*, 488 U.S. 361, 412 (1989). Since *Mistretta*, the Court has rejected a variety of constitutional challenges to sentencing enhancements under the Guidelines (1) that turned on facts not alleged in the indictment, (2) that were based on judicial findings of fact and (3) that required proof only by a preponderance of the evidence. In 1993, the Court rejected the claim that Guideline § 3C1.1, which permits courts to enhance a sentence for perjury committed at the trial from which the conviction arose, violates the defendant's right to testify on his own behalf. *See United States v. Dunnigan*, 507 U.S. 87, 96. In 1995, the Court rejected a double-jeopardy challenge to the "relevant conduct" provisions of the Guidelines, which permit courts to enhance a sentence based on uncharged conduct, because the higher sentencing range "still falls within the scope of the legislatively authorized penalty." *Witte v. United States*, 515 U.S. 389, 399–400. And in 1997, the Court turned back similar challenges to the "relevant conduct"

Guidelines provisions even when (as in that case) the jury had acquitted the defendant on a charge related to that very conduct. *See United States v. Watts*, 519 U.S. 148, 156–57.

In all of these cases, the Court did not characterize the Guidelines themselves as a source of "statutory maximums." And in each of the post-*Mistretta* cases, the Court addressed a question not dissimilar to the one presented here: May federal judges find facts under the preponderance standard that increase a sentence beyond the facts found by the jury under the beyond-a-reasonable-doubt standard? Because the Court said "yes" in each case, this line of authority by itself suggests that a lower court should be skeptical about concluding that *Blakely*'s invalidation of a state-sentencing scheme suddenly dooms the Federal Sentencing Guidelines.

But in *Edwards v. United States*, 523 U.S. 511 (1998), the Court went one step further: It not only rejected a challenge to enhancements based on judge-made findings, but it also did so in the context of a Sixth Amendment challenge. In *Edwards*, the jury convicted the petitioner of conspiring to possess powder cocaine or crack cocaine under 21 U.S.C. § 846. When the judge sentenced him on the basis of both substances, Edwards argued that § 846 should not be interpreted to allow sentences based "on the most severe interpretation of the verdict, carrying the highest range of statutory penalties" in the absence of a jury finding to support the more severe penalty. Br. for Pet'r, 1997 WL 793079, at *7. Otherwise, he argued, his Sixth Amendment rights (among other constitutional rights) would be violated. *Id.* at *30–32. The Supreme Court rejected Edwards' claim because the judge's finding that the conspiracy involved both cocaine and crack did not increase his sentence beyond the maximum sentence permitted by statute for a cocaine-only conspiracy. 523 U.S. at 515.

*Edwards*, to be sure, is a pre-*Blakely* and a pre-*Apprendi* decision. But *Blakely* never mentions the decision, much less

overrules it. And instead of marginalizing *Edwards*, *Apprendi* inflates its significance by saying the following:

> The Guidelines are, of course, not before the Court. We therefore express no view on the subject *beyond what this Court has already held*. See, *e.g., Edwards v. United States*, 523 U.S. 511, 515 (1998) (opinion of BREYER, J., for a unanimous court) (noting that "[o]f course, petitioners' statutory and constitutional claims would make a difference if it were possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy. That is because a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines.").

530 U.S. at 497 n. 21 (emphasis added).

Faced with this line of authority, our Circuit has consistently turned back Sixth Amendment challenges to Guideline enhancements so long as the resulting sentence falls below the congressionally-prescribed statutory maximum. *See United States v. Lawrence*, 308 F.3d 623, 634 (6th Cir. 2002) (noting that *Apprendi* "applies only where the finding 'increases the penalty . . . beyond the prescribed *statutory* maximum'" and does not apply to the Guidelines); *United States v. Garcia*, 252 F.3d 838, 843 (6th Cir. 2001); *see also United States v. DeJohn*, 368 F.3d 533, 546 (6th Cir. 2004); *United States v. Helton*, 349 F.3d 295, 299 (6th Cir. 2003); *United States v. Solorio*, 337 F.3d 580, 597 (6th Cir. 2003). And, in doing so, we have relied on *Edwards*, among other cases. *United States v. Pritchett*, 40 Fed. Appx. 901, 908 (6th Cir. 2002); *United States v. Martin*, 40 Fed. Appx. 177, 186 (6th Cir. 2002); *United States v. Boucha*, 236 F.3d 768, 770 n.1 (6th Cir. 2001).

Instead of criticizing its own cases or lower court cases that have reached similar conclusions, the Supreme Court said in *Blakely* that "[t]he Federal Guidelines are not before us, and we express no opinion on them." *Blakely*, 124 S. Ct. at 2538

n.9. And it said the same thing in *Apprendi*, 530 U.S. at 497 n.21. The Court thus has not given us the authority to invalidate the Guidelines, it has not given us the authority to ignore *Edwards* and it has not given us a sufficient reason to ignore our own decisions upholding the Guidelines. We ought to take the Court at its word.

**Second**, differences between the sentencing provisions at issue in *Blakely* and the Federal Sentencing Guidelines may well have constitutional significance. According to *Apprendi*, the Sixth Amendment contains the following requirement: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Blakely* proceeds to define "statutory maximum" as follows:

> [T]he "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. . . . In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

124 S. Ct. at 2537.

Relying on this passage, Koch argues that, for federal sentencing purposes, the "statutory maximum" is no longer the sentencing range enacted by Congress but the sentencing range promulgated by the Sentencing Commission. The logic of this argument has some force because the Guidelines require federal judges to find facts that will indeed increase individual sentences. The argument is not conclusive, however, because the "statutory maximum" at issue in *Blakely* arose from a statute, and the Sentencing Guidelines are not statutes. While sentencing statutes and the Guidelines both have the force of law and both bind courts, *see Stinson*

*v. United States*, 508 U.S. 36, 42 (1993), the Guidelines are agency-promulgated rules enacted by the Sentencing Commission—a non-elected body that finds its home within the Judicial Branch, the very branch of government in which sentencing discretion has traditionally been vested. *See Mistretta*, 488 U.S. at 396 (the Guidelines do not "vest in the Judicial Branch the legislative responsibility for establishing minimum and maximum penalties for every crime. They do no more than fetter the discretion of sentencing judges to do what they have done for generations—impose sentences within the broad limits established by Congress."). This precise distinction, notably, was central to *Mistretta*'s decision to uphold the Guidelines in the first instance. *Id.* at 396–97.

Whether this distinction will carry the day in *Booker* and *Fanfan* remains to be seen, but it at least undermines the view that *Blakely compels* us to invalidate the Sentencing Guidelines. *Blakely* did not hold—because it could not hold—that agency-promulgated sentencing rules must be treated as creating "statutory maximums." The issue was not before the Court. And indeed Blakely's counsel advanced the very distinction we have drawn, arguing that Washington's standard "sentencing ranges" as "prescribed by the legislature" differ materially from the "federal sentencing grid [which] is promulgated by a Sentencing Commission that resides in the Judicial Branch." Br. for Pet'r, 2003 WL 22970606, at *23 n.6. "*Apprendi*'s prohibition," he continued, "against exceeding the 'statutory' maximum based on facts that were not submitted to the jury or proved beyond a reasonable doubt arguably pertains only [to] sentencing limits set by legislatures." *Id.*

The distinction seems significant in another sense. While it may be true that agencies are no less capable of violating the Sixth Amendment than legislatures, the Guidelines come from the very branch of government that all nine Justices of the Court agree has long exercised considerable discretion over sentencing determinations based on the same kinds of

factual determinations that the Guidelines ask federal courts to make. *Blakely*, 124 S. Ct. at 2538, 2540; *id.* at 2553 (O'Connor, J., dissenting). If federal judges, in other words, may consider facts that increase sentences in an indeterminate sentencing regime, is it not permissible for this branch of government collectively to channel the consequences of these facts based on their group experience? Maybe the Court will find the distinction consequential; maybe it will not. But the difference is enough to counsel restraint on the part of a lower court asked to invalidate the entire regime.

Unlike the sentencing statute in *Blakely*, finally, it remains unclear how a rule that turns on the "statutory maximum" or the "maximum sentence" would apply to the Sentencing Guidelines. The Guidelines do not supply a clear "standard sentencing range" for each defendant and indeed represent a form of indeterminate-determinate sentencing because even after application of the hundreds of pages of the Guidelines Manual, to say nothing of relevant case law, to each individual defendant's sentence, judges still may increase (or decrease) sentences based on factors not addressed in the Guidelines. *See* 18 U.S.C. § 3553(b)(1); U.S.S.G. § 5K2.0. No "standard" sentence for categories of defendants thus emerges from the Guidelines in the same way that it does for the two-factor sentencing grid that Washington's legislature adopted.

**Third**, in asking us to invalidate the Guidelines, Koch asks us to embrace a reading of *Blakely*—*any* fact that increases a defendant's punishment must be submitted to a jury—that not only would extinguish the Guidelines but also would create tension with other Court precedents.

It has long been true that legislatures may treat some facts as "sentencing factors" that need not be submitted to a jury and other facts as "elements" of the crime that must be submitted to a jury and (in the federal system) included in the indictment. In *McMillan v. Pennsylvania*, 477 U.S. 79, 91-92 (1986), and *Harris v. United States*, 536 U.S. 545, 558

(2002), the Court held that judges may find facts that compel a mandatory minimum sentence and that necessarily will increase some defendants' sentences. In *Almendarez-Torres v. United States*, 523 U.S. 224, 226 (1998), the Court held that the Government need not include the fact of a prior conviction in an indictment (and prove it to a jury beyond a reasonable doubt) because it is not an "element" of the offense, even though it may increase the defendant's punishment. In *Jones v. United States*, 526 U.S. 227, 248 (1999), the Court said that "[i]t is not, of course, that anyone today would claim that every fact with a bearing on sentencing must be found by a jury; we have resolved that general issue and have no intention of questioning its resolution." And in *Patterson v. United States*, 432 U.S. 197 (1977), the Court held that legislatures have wide latitude in defining the elements of a crime that must be proved to a jury beyond a reasonable doubt. *See id.* at 210; *see McMillan*, 477 U.S. at 84 ("*Patterson . . .* rejected the claim that whenever a State links the severity of punishment to the presence or absence of an identified fact the State must prove that fact beyond a reasonable doubt.") (quotation omitted).

In the face of these decisions, *Blakely* presents a lower court with stark alternatives for explaining why the Guidelines must be invalidated. One possibility: *Blakely* means that judges may *never* make findings of fact that increase an individual's sentence. No doubt this theory would invalidate the Guidelines, but it also would create tension with the Court's other decisions giving legislatures wide berth in distinguishing between sentencing facts and elements-of-the crime facts. The other possibility: *Blakely* means that "Other than the fact of a prior conviction, other than facts that compel mandatory minimum sentences and other than (still other) facts not traditionally treated as elements of a crime, any fact that increases the penalty for a crime must be submitted to a jury." This theory might eliminate the Guidelines; it might not. Under either theory, however, the critical point is that only a master tailor could invalidate the

Guidelines without unraveling the fabric of these other rulings.

All of which brings us back to our central concern. It may be that the trajectory of *Apprendi*, *Ring* and *Blakely* will end with a nullification of the Guidelines. But, in the face of these relevant precedents, it is not for us to make that prediction or to act upon it. Not only would such a ruling be of some consequence to the Guidelines, but it also would be in tension with whole bodies of law that the lower courts long have been obliged to follow.

---

**DISSENT**

---

BOYCE F. MARTIN, JR., Circuit Judge, dissenting, joined by DAUGHTREY, MOORE, COLE, and CLAY, Circuit Judges. The majority's opinion in this case amounts to nothing more than an exercise in futility and a waste of time and resources, in light of the Supreme Court's grant of *certiorari* in *United States v. Booker*, No. 04-104, 2004 WL 1713654 (Aug. 2, 2004), and *United States v. Fanfan*, No. 04-105, 2004 WL 1713655 (Aug. 2, 2004). Both cases present the question of the impact of *Blakely v. Washington,* 124 S. Ct. 2531 (2004), on the United States Sentencing Guidelines, and both are scheduled for oral argument in just over a month, on October 4. Given that the Supreme Court's impending resolution of *Booker* and/or *Fanfan* will likely resolve the primary issue in this case, I believe that the most appropriate course of action would be to withhold our decision until the Supreme Court has spoken.

Nevertheless, because the majority has taken this opportunity to state its position, I feel compelled to explain why I disagree. For the reasons discussed below, I believe that the Guidelines are invalid under *Blakely* to the extent that they compel a trial judge to impose a sentence that exceeds the maximum sentence that is authorized "*solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 124 S. Ct. at 2536 (emphasis in original). This is the same view espoused by the Seventh Circuit, *see United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), the Eighth Circuit, *see United States v. Mooney*, No. 02-3388, 2004 WL 1636960 (8th Cir. July 23, 2004), *vacated on grant of reh'g en banc*, Aug. 6, 2004, and the Ninth Circuit, *see United States v. Ameline*, No. 02-30326, 2004 WL 1635808 (9th Cir. July 21, 2004), as well as by United States District Judges such as Judge D. Brock Hornby, whose

oral decision in *United States v. Fanfan*, No. 03-47-P-H (D. Me. June 28, 2004), will be reviewed by the Supreme Court in October, and by the panel of our Court that decided *United States v. Montgomery*, No. 03-5256, 2004 WL 1562904 (6th Cir. July 14, 2004), *vacated on grant of reh'g en banc*, July 19, 2004, *appeal dismissed*, July 23, 2004.

The seeds of *Blakely* were sown in *Apprendi v. New Jersey*, in which the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). The Court applied this rule to strike down a New Jersey hate crime statute that authorized a judge to impose a twenty-year sentence, despite the usual ten-year maximum, if the judge found that the crime was committed "'with a purpose to intimidate . . . because of race, color, gender, handicap, religion, sexual orientation or ethnicity.'" *Id.* at 468-69 (quoting N.J. STAT. ANN. § 2C:44-3(e) (West Supp. 1999-2000)). Two years later, in *Ring v. Arizona*, the Supreme Court applied the same rule to invalidate an Arizona law authorizing the death penalty if the judge found one of ten aggravating factors. 536 U.S. 603-09 (2002).

In *Blakely*, the Court built upon and clarified the rule announced in *Apprendi*, holding that:

Our precedent make clear . . . that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts

"which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 124 S. Ct. at 2537 (citations omitted) (emphasis in original).

*Blakely* involved the constitutionality of the sentencing scheme employed by the State of Washington, which was composed of two statutes. The first statute prescribed the sentence ranges for each class of felony offenses. Blakely was convicted of second-degree kidnaping, for which the statute provided a maximum sentence of ten years imprisonment. WASH. REV. CODE ANN. § 9A.20.021(1)(b). The second statute, called the Sentencing Reform Act, specified more limited standard sentence ranges for particular offenses; for Blakely's offense, it set a range of 49-53 months imprisonment. *Id.* § 9.94A.320. A Washington trial court could impose a sentence that exceeded this standard range only if it found a "substantial and compelling reason justifying an exceptional sentence." *Blakely*, 124 S. Ct. at 2535. The Sentencing Reform Act specified several factors that would justify a trial judge's decision to impose an exceptional sentence. *Id.* The trial judge in *Blakely* found that the defendant had acted with "deliberate cruelty," one of the listed factors, and, accordingly, increased his sentence to 90 months. *Id.* at 2537. The Supreme Court held that the fact that Blakely's sentence was increased above the Sentencing Reform Act's standard range of 49-53 months based upon facts neither found by a jury nor admitted by Blakely was a violation of *Apprendi*. *Id.* at 2537-38.

As the majority acknowledges, in determining what the statutory maximum was for purposes of *Apprendi*, the *Blakely* Court looked to the standard sentence range for second-degree kidnaping that was set by the Sentencing Reform Act, *not* to the broader sentence range provided in the other statute. *Id.* As a logical consequence, the statutory maximum in this case is provided in the Guidelines, rather than in the substantive criminal statutes that Koch was convicted of violating. Both

the Guidelines and the Washington Sentencing Reform Act were designed to narrow the extremely wide sentence ranges within which a defendant could be sentenced for any particular offense. *Compare* U.S. SENTENCING GUIDELINES MANUAL ch. 1, pt. A, Introduction (2003) (explaining that the Guidelines were designed to "narrow[]" the wide sentence ranges that applied to "similar criminal offenses committed by similar offenders") *with* WASH. REV. CODE ANN. § 9.94A.010 (explaining that the Washington Sentencing Reform Act was designed to "structure[] . . . discretionary decisions affecting sentences" and "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history"). Just as it was the narrower sentence range under the Washington Sentencing Reform Act that provided the "statutory maximum" in *Blakely*, the narrower sentence range under the Guidelines provides the "statutory maximum" in this case.

Both the Guidelines and the Washington Sentencing Reform Act provide for an increase in a defendant's sentence beyond that which is authorized by the jury's verdict or the defendant's admissions, based upon facts neither found by a jury beyond a reasonable doubt nor admitted by the defendant, but rather found by a judge under the much lower civil burden of proof. In this case, it is undisputed that Koch's sentence was increased, solely on the basis of facts found by the district judge, to an amount that exceeded the sentence that was authorized under the Guidelines in light of the jury's verdict. This is precisely what *Blakely* condemns. Although *Blakely* addresses only the Washington sentencing scheme, its holding applies with equal force to the Guidelines.

The majority concedes that "[t]he logic of this argument has some force," but ultimately finds the argument "not conclusive . . . because the 'statutory maximum' at issue in *Blakely* arose from a statute, and the Sentencing Guidelines are not statutes." Maj. Op. at 9. That is a distinction without a difference. I presume that the majority would agree that

were the challenged provisions of the Guidelines enacted by Congress in the first instance, they would be unconstitutional under the rule announced in *Blakely*. I fail to see how the fact that Congress delegated its authority to the Sentencing Commission to set presumptive sentencing ranges saves the federal scheme from constitutional attack. The majority's holding contravenes and undermines *Blakely* by allowing Congress to accomplish indirectly – by delegating authority to the Commission – precisely what we now know the Sixth Amendment prohibits it from doing directly.

The congressional delegation of power to the Sentencing Commission does not affect Congress's authority – and, indeed, its obligation – to ratify the Guidelines. *See Ameline*, 2004 WL 1635808, at *7. Congress must ratify each Sentencing Guideline promulgated by the Commission, and it retains the power to "revoke or amend any or all of the Guidelines as it sees fit either within the 180-day waiting period or at any time." *Mistretta v. United States*, 488 U.S. 361, 393-94 (1989); 28 U.S.C. § 994(p). It is well-established that the Guidelines have the force of law, *Stinson v. United States*, 508 U.S. 36, 45 (1993), and "bind judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal cases," *Mistretta*, 488 U.S. at 391.

Furthermore, and perhaps more to the point, neither the outcome nor the reasoning in *Blakely* turned upon the fact that the Washington Sentencing Reform Act was enacted in the first instance by the state legislature. As Justice O'Connor recognized in her dissenting opinion in *Blakely*:

It is no answer to say that today's opinion impacts only Washington's scheme and not others, such as, for example, the Federal Sentencing Guidelines. The fact that the Federal Sentencing Guidelines are promulgated by an administrative agency nominally located in the Judicial Branch is irrelevant to the majority's reasoning. The Guidelines have the force of law, and Congress has

unfettered control to reject or accept any particular guideline.

*Blakely*, 124 S. Ct. at 2549-50 (O'Connor, J., dissenting, Part IV.A., joined by Breyer, J.)  Justice Breyer's dissenting opinion expressed a similar view.  *Id.* at 2561 (Breyer, J., dissenting) ("Perhaps the Court will distinguish the Federal Sentencing Guidelines, but I am uncertain how.").  The demise of the Guidelines was forecast more explicitly in Justice Breyer's dissenting opinion in *Apprendi*, in which he wrote:

> The actual principle underlying the Court's [*Apprendi*] decision may be that any fact (other than prior conviction) that has the effect, *in real terms,* of increasing the maximum punishment beyond an otherwise applicable range must be submitted to a jury and proved beyond a reasonable doubt. *See* [*Apprendi*, 530 U.S. at 494] ("[T]he relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?").  The principle thus would apply . . . to all determinate-sentencing schemes in which the length of a defendant's sentence within the statutory range turns on specific factual determinations (*e.g.,* the federal Sentencing Guidelines).  Justice Thomas essentially concedes that the rule outlined in his concurring opinion would require the invalidation of the Sentencing Guidelines. [*Id.* at 523], n. 11.

*Apprendi*, 530 U.S. at 543-44 (Breyer, J., dissenting).[1]

---

[1] The footnote in Justice Thomas's dissenting opinion to which Justice Breyer refers reads as follows:

> It is likewise unnecessary to consider whether (and, if so, how) the rule regarding elements applies to the Sentencing Guidelines, given the unique status that they have under [*Mistretta*].  But it may be that this status is irrelevant, because the Guidelines

I am also unpersuaded by the majority's reliance upon cases that uphold sentences imposed under the Guidelines against various constitutional challenges.  The majority assumes that finding in Koch's favor would necessarily require us to "anticipate the overruling of Supreme Court precedent," but that assumption is erroneous.  The Supreme Court has never decided the issue presented in this case.

Among the cases cited by the majority, particular emphasis is placed upon *Edwards v. United States*, 523 U.S. 511 (1998), a case that the majority says "rejected a challenge to enhancements based on judge-made findings . . . in the context of a Sixth Amendment challenge."  Maj. Op. at 7.  In reality, however, the *Edwards* Court expressly declined to consider the petitioners' Sixth Amendment claim.  *See Edwards*, 523 U.S. at 516 (proclaiming that "we need not, and we do not, consider the merits of petitioners' statutory and constitutional claims").  Moreover, the Sixth Amendment claim that the *Edwards* petitioners had advanced did not challenge the validity of the Guidelines.  Rather, the petitioners argued that the district court erred in determining whether the drug conspiracy involved cocaine or cocaine base when the jury's general verdict was ambiguous as to the drug involved.  *See* Petitioners' Br., 1997 WL 793079, at *30-31 ("Petitioners are entitled to have the jury determine what illegal agreement the Petitioners formed and agreed to participate in.").  This argument concerns the effect of the Sixth Amendment on 21 U.S.C. § 846, not on the Guidelines.  As the Seventh and Ninth Circuits have stated:

> The Court did not opine on the guidelines' consistency with the amendment because that consistency was not challenged.  It did not rebuff a Sixth Amendment

---

"have the force and effect of laws."

*Id.* at 523, n.11 (Thomas, J., dissenting) (citation omitted) (quoting *Mistretta*, 488 U.S. at 413 (Scalia, J., dissenting)).

challenge to the guidelines because there was no Sixth Amendment challenge to the guidelines.

*Booker*, 375 F.3d at 514; *Ameline*, 2004 WL 1635808, at *8. For these reasons, *Edwards* is inapposite.

The majority's reliance upon our Court's post-*Apprendi* cases is similarly misplaced. Those cases are simply irrelevant here in light of the Supreme Court's intervening decision in *Blakely*, which undermines our prior holdings. *See Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (holding that a prior decision is not "controlling authority" if it is "inconsistent" with an intervening Supreme Court decision).

Finally, the majority states that "in responding to a request that we invalidate the Sentencing Guidelines, we agree with Judge Easterbrook that '[t]his is the wrong forum for such a conclusion.'" Maj. Op. at 5 (quoting *Booker*, 375 F.3d at 515 (Easterbrook, J., dissenting)). Notwithstanding the fact that Koch has made no "request" that the Guidelines be invalidated (counsel for Koch explicitly stated in oral argument that he was not asking the Court to invalidate the Guidelines and, indeed, argued that our decision in this case should await the Supreme Court's resolution of *Booker* and/or *Fanfan*), the majority ignores our very duties as United States Circuit Judges. Having insisted upon declaring its view regarding the applicability of *Blakely* to the Guidelines, rather than – as I would do – awaiting the Supreme Court's impending resolution of the issue, the majority is obligated, as we all are, to interpret and apply Supreme Court precedent to the facts of this case, regardless of whether its analysis leads to a result that it does not like. As I have explained, *Blakely*'s holding logically controls the outcome of this case, and the majority errs in concluding otherwise. The majority simultaneously abdicates its responsibility to decide this issue in a reasoned manner and insists upon "deciding" this issue as quickly as possible. If the majority truly wished merely to provide interim guidance for the district courts while at the

same time waiting for the Supreme Court to decide the issue before fully examining *Blakely*'s application to the Guidelines, it would not, one hopes, be releasing opinions possibly affected by *Blakely* in the meantime.

The question remains whether the unconstitutional aspects of the Guidelines are severable from the rest of the Guidelines, an issue on which courts have reached differing results. Just as I would have withheld our decision in this case pending the Supreme Court's resolution of the applicability of *Blakely* to the Guidelines, I believe that the decision of whether and to what extent the Guidelines are severable is better left to the Supreme Court. Notably, the issue need not be resolved at all if the Court finds that the Guidelines are unaffected by *Blakely*.

There is one procedural complication in this case that also must be addressed. The United States argues that Koch forfeited this claim of error by failing to object to his sentence on *Apprendi* grounds. Accordingly, it argues, we are limited to reviewing the claim for plain error. FED. R. CRIM. P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). *See also United States v. Cotton*, 535 U.S. 625, 628-29 (2002). We have indicated, however, that where a defendant has objected to the factual findings that underlie his sentence, he has preserved for de novo review on appeal a constitutional objection based on a rule of law announced subsequent to his trial. *See United States v. Strayhorn*, 250 F.3d 462, 467 (6th Cir. 2001), *overruled in part by Harris v. United States*, 536 U.S. 545 (2002). I reserve judgment as to whether the principle announced in *Strayhorn* applies to this case because I believe that the error present in Koch's sentence is cognizable under plain error review, which is the least rigorous standard suggested by the parties.

Plain error exists where there is "1) error, 2) that is plain, and 3) that affects substantial rights. If all three conditions are met, [we] then exercise [our] discretion to notice a

forfeited error, but only if 4) the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997).

First, by imposing a sentence that exceeded the maximum sentence available under the Guidelines in light of the jury's verdict, based upon facts neither found by a jury nor admitted by Koch, the district court deviated from the holding of *Blakely*. "Deviation from a legal rule is 'error' unless the rule has been waived." *United States v. Olano*, 507 U.S. 725, 732-33 (1993).

With respect to the second and third prongs, we have held that both "are satisfied when the defendant's total sentence exceeds the maximum sentence that could lawfully be imposed based upon the jury's verdict as to all counts of conviction." *United States v. Graham*, 275 F.3d 490, 523 (6th Cir. 2001) (citations omitted). This is precisely what happened in this case, and it is now "plain" that this is precisely what *Blakely* prohibits. *See Johnson*, 520 U.S. at 468 ("Where the law at the time of trial was settled and clearly contrary to the law at the time of appeal it is enough that an error be 'plain' at the time of appellate consideration.") The district judge's application of the preponderance of the evidence standard to the facts presented at the sentencing hearing certainly affected Koch's ultimate sentence. *See Olano*, 507 U.S. at 734 (holding that an error affects "substantial rights" where it has "affected the outcome of the district court proceedings"). The judge imposed several sentencing enhancements, and found that the conspiracy involved 907 kilograms of marijuana (as compared to the probation officer's estimate of 38.977 kilograms), based upon relatively weak evidence, much of which was never presented at trial. *Cf. Ameline*, 2004 WL 1635808, at *9.

Finally, the error affected the fairness of the proceedings. Koch suffered at least the same unfairness that Blakely suffered, for which the Supreme Court had this to say:

> Any evaluation of *Apprendi*'s fairness to criminal defendants must compare it with the regime it replaced, in which a defendant, with no warning in either his indictment or plea, would routinely see his maximum potential sentence balloon from as little as five years to as much as life imprisonment, *see* 21 U.S.C. §§ 841(b)(1)(A), (D), based not on facts proved to his peers beyond a reasonable doubt, but on facts extracted after trial . . . .

*Blakely*, 124 S. Ct. at 2542. Because the district court's imposition of Koch's sentence was plain error, I would remand for resentencing in light of *Blakely*.

For these reasons, I respectfully dissent.